## PENNSYLVANIA RAILROAD COMPANY *v.* LYTLE.

[No. 16,656. Filed June 24, 1941.]

*Condo, Van Atta, Batton & Harker,* of Marion, for appellant.

*Hogston & Hogston,* of Marion, *Salyer & Cleveland,* of Anderson, and *Donald L. Smith,* of Indianapolis, for appellee.

BEDWELL, J.—This was an action by the appellee, Fred Lytle, against the appellant, The Pennsylvania Railroad Company, and one W. H. Bentlage to recover damages for personal injuries alleged to have been received by appellee as the result of a collision between a train operated by appellant and a motor bus operated by the appellee at a public highway crossing in the city of Anderson. The complaint named the engineer W. H. Bentlage as party defendant, but before the trial the cause was dismissed as to such defendant.

The complaint was in one paragraph and it charged the appellant with negligence in various particulars, among which were failure to sound the whistle upon the locomotive engine and train when it was not less than 80 nor more than 100 rods from the particular crossing, and failure thereafter to continuously ring the bell upon the locomotive engine until it had approached and crossed the particular crossing; failure to give any signal, warning, or notice of any kind of the approach of the train to the crossing; failure to keep a lookout and watch for vehicles and motor passenger buses approaching the crossing; negligently approaching such crossing at a speed of from 50 to 70 miles an hour without notice or warning of the train's approach; negligently operating a train at a high and dangerous rate of speed over the particular crossing, which was alleged to be in the business and industrial district of the city where a large number of persons and vehicles crossed the intersection, and where the crossing was obstructed and was hazardous and dangerous.

There was an answer of general denial to the complaint and trial by jury, which returned a verdict for the appellee in the sum of ten thousand dollars ($10,000).

Appellant has assigned as error (1) the overruling of appellant's motion made at the close of the evidence, to instruct the jury to return a verdict for the appellant, and (2) the overruling by the trial court of its motion for a new trial.

The sole basis for reversal, as stated by appellant in its brief, is: That the undisputed evidence in this case, together with all the inferences that may be fairly drawn therefrom most favorable to him, clearly shows that appellee was guilty of contributory negligence as a matter of law.

A summary of the evidence, and particularly that portion thereof which has a bearing upon the question of the contributory negligence of the appellee, is as follows:

On January 9, 1938, at about 3 o'clock p. m., appellee was driving a passenger bus south along Baldwin avenue in the city of Anderson. This avenue is also State Road No. 9. When the bus reached a point about 10 or 12 feet from the track of appellant's railroad crossing of such avenue, the appellee stopped the bus near the west curb line of Baldwin avenue. At that time there were nine passengers in the bus. According to the testimony of three of these passengers, and appellee himself, when he stopped the bus, he looked in both directions down and up the railroad track of appellant. Neither he nor any of the passengers riding with him in the bus, who testified, saw or heard the approach of any train. Appellee then shifted the gears of his motor bus and started to cross the tracks at the crossing. While the motor bus was on the tracks at the crossing, it was struck by an engine of appellant; and all the persons riding in the motor bus were seriously injured or killed. Of the ten persons in the bus five were killed.

One of the surviving passengers, who testified as a witness for appellee, stated that when the bus got close to the railroad track the appellee brought his bus to a stop about 10 or 15 feet from the north rail of the track, and that the right side of the bus was about 3 feet from the west curb line of the street or state road. When the bus stopped, this particular passenger looked toward the northwest (the direction from which the train came which struck the bus) and did not see any train; that he looked in such direction for a train both before and after the bus stopped; that the appellee, when he stopped the bus, opened the door, and that the appellee looked in both directions; that the appellee turned his head over his right shoulder and looked up the track toward the northwest; that he shut the door after he looked both ways and started up; that after the appellee started up, and when the front end of the bus was about the middle of the track, the witness saw the train about 100 feet from the west edge of the crossing.

Two other witnesses, who were riding in the bus close to the driver, testified that appellee stopped the bus about 12 feet from the railroad track on the north side thereof and looked in both directions for the approach of a train; that they neither saw nor heard a train until they were struck.

The appellee himself testified that he was fifty-three years of age and his eyesight and hearing were good; that he had worked as motorman for traction company and had been driving a bus for the receiver of Indiana Railroad for five or six weeks prior to the accident, and that he crossed this particular crossing about thirty times each day and was thoroughly familiar with the crossing; that he always looked for trains at the crossing because he knew it was a very dangerous crossing; that on the day of the collision he stopped his bus 10

or 15 feet north of the north rail of the railroad track and that the bus was about 2 feet from the west curb of the street; that he opened the door and looked to the left and to the right and then shut the door and proceeded to cross; that he did not see or hear a train; that he never heard a whistle or a sound of a bell. When the front wheels of his bus were between the rails he saw the train for the first time and in his judgment it was about 350 feet away; that it did not sound the whistle or ring the bell and he estimated that it was going 60 or 65 miles an hour; that he swerved his bus to try to get across the track, but that the train hit the bus back of where he was sitting.

Of the ten persons that were riding in the bus at the time of the collision, there is no evidence that any of them saw or heard the approach of appellant's train until the wheels of the bus were on the track and the collision was unavoidable. A witness who testified for appellant, and who was driving an automobile which was parked close to the bus when it stopped north of the railroad track, testified that the bus stopped but that the appellee did not look to the northwest for the approach of a train.

At the place of accident, the railroad tracks of appellant run generally from northwest to southeast and the street or state road from northeast to southwest. Northwest of the place of accident, the railroad tracks run almost due north and south on a railroad bridge across White River, and about 122 feet south of the south end of such bridge they curve to the southeast and across the crossing on a curve of 2 30-degrees. From the west curb line of the highway, measured along the east rail of the railroad track, it is 791.4 feet to the south abutment of the railroad bridge across White River and it is 1,761 feet from the same point to the extreme north

end of the railroad bridge. Baldwin avenue or State Road No. 9 is a new concrete road forty-three feet wide from curb to curb and the railroad crosses it at an angle of about 26-degrees from the northwest to the southeast. The crossing had no form of protection except the statutory crossarm warning sign. Along the east side of the railroad embankment there were seven telegraph poles with crossarms and wires strung thereon; near the south bank of the river there were some bushes and several trees growing. The speed of the train as it approached the crossing was variously estimated by witnesses as from 35 to 65 miles per hour.

The engineer who was driving the engine stated that this crossing had been put in four or five months prior to the accident; that he knew it was a much traveled highway and that he knew the tracks of the Pennsylvania Railroad approached the crossing from the north on a curve; that on the day of the accident the train was running about an hour and thirty minutes late; that the accident occurred about 3:09 p. m.; that he gave the signals required by statute; that as he approached the crossing he rode on the west side of the locomotive and because of the curve in the track he could not see the crossing, and that he never, at any time, saw the bus that was struck; that before the collision the steam had been shut off the engine and the train was coasting; that the train was traveling from 35 to 40 miles per hour at the time of the collision; that when the engine was coasting it was going down grade and around a curve and that all they were doing was keeping up the slack between coaches.

The evidence was conflicting concerning the ringing of the bell and the giving of signals of the approach to the crossing. Certain photographs were introduced into evidence by appellant, which appellant contends show

that from the point where appellee had stopped his bus there was an effective view of a train as far as the north end of the railroad bridge which crossed White River or 1,761 feet from the highway crossing.

Many other details, including the size of the bus, the location of passengers therein, the size of the locomotive, the level of the land, the location of buildings and structures in the vicinity of the crossing, the location of other highways in the vicinity, the state of the weather, the number of telephone poles, the location of a mill on the north side of White River, the fact that the headlight had been turned on the engine prior to the collision, the method of opening and the location of the front door of the motor bus, the speed of the motor bus, the width of the crossing, the location of a highway bridge across White River in the vicinity of the railroad bridge, are disclosed by the evidence. All of these evidentiary facts have some importance in determining the question of whether appellee failed to exercise reasonable care, but it is not practical to set forth in this opinion all the items of evidence that were considered by the jury.

The first contention of appellant is that appellee was guilty of negligence that proximately caused his injuries because, when he stopped his motor bus and looked for the approach of trains, he failed to look *effectively*. Such contention is without merit. Appellee was required to exercise ordinary care in looking; but under the conditions disclosed by the evidence, this court would have no right to declare that he was negligent because he failed to see the approaching train. Appellant introduced no evidence which showed that he did not select a proper place for looking. The evidence as to the manner in which he looked was conflicting. There were many things that could have prevented his seeing an approaching train although his sight was in

the direction from which the train was coming. It was for the jury to determine whether his failure to see the train resulted from negligence.

Appellant next contends that appellee had a view of the approaching train and that there is a presumption of law that he did not look, or if he did look that he did not heed what he saw. Whether appellee had a view of the approaching train at the time he stopped his motor bus and looked, was a disputed question of fact for determination by the jury. Two witnesses, testifying for appellant, testified to facts which indicated that he did, but appellee and one of the passengers in the motor bus testified to facts which tended to show and which asserted that he did not. Whether appellee had a view of the approaching train at the particuar time that he stopped his motor bus and looked, was dependent upon a number of factors, among which might be mentioned certain obstructions to sight between appellee and the approaching train at the time that he looked, the location of the train at that particular time, the condition of the weather, the fact that the headlight of the engine was burning at 3 o'clock in the afternoon, the fact that the approaching train was coming around a curve and from a direction in the rear of appellee.

It was within the province of the jury to consider all these conditions and circumstances shown by the evidence, and its determination is conclusive. This court does not weigh evidence or determine the credibility of witnesses. There exists no basis for an attempted application of the so-called "presumption."

In the recent case of *Baltimore & Ohio R. Co.* v. *Reyher, Admx.* (1940), 216 Ind. 545, 550, 24 N. E. (2d)

284, the court discusses this and similar so-called ■ "presumptions," and holds that in negligence cases there is no presumption that either party was or was not negligent, and that neither courts nor juries have any right to presume any fact in issue which they are called upon to determine. The court says:

"It has also been imprudently asserted that presumptions may be drawn from the facts by the trial court when it passes upon a motion for a directed verdict or a demurrer to the evidence, and by the appellate tribunal when it is called upon to determine whether the verdict or decision is supported by the evidence or is contrary to law. It is likewise incorrect to say that the courts may presume any fact under such circumstances. As in the illustration used above, there is no presumption whatever that either party was or was not guilty of negligence. The court is merely called upon to determine if there is some evidence of negligence on the part of the defendant which the jury is entitled to consider in deciding that issue, or if the undisputed evidence discloses that the plaintiff was guilty of negligence that proximately contributed to his injury or death. While some facts may be made presumptive evidence by operation of law, neither courts nor juries have any right to presume any fact in issue which they are called upon to determine."

In the case of *Kelley* v. *Dickerson* (1938), 213 ■ Ind. 624, 634, 13 N. E. (2d) 535, the court says:

"The law of this state does not permit the indulgence in the presumption that a person will exercise his faculties for his own protection and safety, nor may it be presumed that he was or was not guilty of contributory negligence, nor that he failed to exercise ordinary care."

Whether or not the appellee was guilty of contributory negligence is not to be determined by the application of so-called "presumptions." It is to be determined

from the evidence; and it was the right, solely, of the jury to weigh and determine the evidence.

In the case of *Bartley* v. *Chicago & E. I. R. Co.* (1940), 216 Ind. 512, 524, 24 N. E. (2d) 405, the court quotes with approval from *Central Indiana R. Co.* v. *Wishard* (1917), 186 Ind. 262, 114 N. E. 970, the following:

> " 'The courts of this State have been very cautious in stating that any special acts or precautions were required in the exercise of ordinary care, generally leaving that question to the jury. . . .
>
> " 'Appellant asks us to go further in this case and to declare as a matter of law that other specific precautions on the part of appellee were necessary in the exercise of ordinary care, as, for instance, to stop his motor, or to stand up and look, or to get out and go forward and look up and down the track. It is possible that the judge who presided at the trial may have thought that ordinary care under the circumstances shown required the use of some or all of such precautions or that some of the members of this court may think so; but these are not questions of law for the decision of courts. It has been thought wise to submit such question to the twelve laymen composing the jury to be decided as questions of fact under proper instructions from the court, in order that they may bring to bear their varied experiences and knowledge of men, in determining what a reasonably prudent man would ordinarily do under the circumstances disclosed by the evidence. This court cannot say that there is no room for reasonable minds to differ on any of these questions; and, therefore, cannot hold as a matter of law that any precaution under consideration should or should not have been observed in the exercise of due care.' "

Plainly, this is a case where an appellate court can not properly determine that the appellee was guilty of contributory negligence as a matter of law. A study of the reported cases discloses that many different situations exist in railroad crossing cases. In many of them the individual is killed and

there is little or no evidence as to what he did when he approached the crossing, and the courts are called upon to apply certain presumptions or inferences. In others there may be direct and positive evidence, that is without contradiction, that the deceased or injured person did not stop or look or listen, or exercise any precaution for his own safety; and the courts are justified as a matter of law in holding that the deceased or injured person was guilty of contributory negligence.

But here we have a different situation. There were nine persons in addition to the appellee who were riding in the motor bus that was struck; five of these were killed in the collision. All the evidence, without dispute, shows that the motor bus was stopped at a distance of from 10 to 15 feet north of the north rail of appellant's track. There is no contention that the bus was not stopped at a proper place for the observance of approaching trains. Of the nine passengers that were riding in the bus, there exists no evidence that any of them either saw or heard the approach of this particular train while the motor bus was stopped. Three of such passengers, in addition to the appellee himself, testified positively that they did not see or hear the same, and three of the passengers, in addition to appellee, testified that appellee looked in both directions, that is both up and down the railroad track, for approaching trains when his motor bus was stopped. Whether appellee exercised ordinary care was a question of fact to be determined by the jury.

The trial court did not err in overruling appellant's motions for a directed verdict or for a new trial.

The judgment is affirmed.

NOTE.—Reported in 34 N. E. (2d) 939.