Blessing *v.* Dodds.

---

## BLESSING *v.* DODDS.

EVIDENCE.—*Declarations of Party.*—*Attorney.*—*Agent.*—On the trial of an action by A. against B. to recover one-half of the costs and expenses incurred in a suit theretofore prosecuted in their joint names and paid by A., the question in controversy being whether B. was a real party in

Blessing *v.* Dodds.

interest in said joint action, and therefore liable for one-half the costs and expenses thereof, or whether he had no interest therein, and it was commenced without his knowledge or consent, and he afterwards agreed that it might be prosecuted in his name, with that of A., for the sole benefit of A., and without responsibility on his part, as between him and A., for said costs and expenses, it was competent for B. to give in evidence a conversation between himself and an attorney of A. in said joint action, had in the absence of A., after B. had learned of the pendency of said joint action, in which conversation such an agreement for the continued prosecution of said joint action was made, and also a conversation, had also in the absence of A., between B. and another attorney of A. in said joint action, who had been instructed by A. to procure the signature of B. to an appeal bond for the purpose of appealing said joint action to the Supreme Court, for the purpose of showing that B. signed said appeal bond upon a similar condition and agreement.

From the Shelby Circuit Court.

*S. Major, C. Wright* and *T. W. Woollen,* for appellant.

*O. J. Glessner, K. M. Hord* and *A. Blair,* for appellee.

BUSKIRK, J.—This was a suit by Blessing to recover from Dodds one-half of the costs and expenses incurred in the prosecution of a suit in their joint names, in the Decatur Circuit Court, against one Alonzo Blair, in which action there had been a verdict and judgment in favor of Blessing and Dodds for a nominal sum.   Blessing, having paid all the costs and expenses, amounting to the sum of ——— dollars, brought this action to recover from Dodds the one-half of such sum.

The appellee answered by the general denial.   There was a trial by jury, resulting in a verdict for the appellee.

The only error assigned is based upon the action of the court below in overruling the motion for a new trial.

The only question discussed and relied upon by counsel for appellant for a reversal of the judgment is the alleged admission of illegal and incompetent evidence.   The appellee was examined as a witness, and, over the objection and exception of the appellant, was permitted by the court to testify as follows:

"I went to Edwin W. Davis, Blessing's attorney, and told him my feelings; that my name had been used without

my knowledge or consent; told Davis it was not right for Blessing to use my name without authority."

Again.   "I spoke to Ben Love about the matter; told him that my name was used without my consent; that I would employ counsel to have my name taken off.   My actions were governed by assurances I received from Davis and Love, with the assurances from Davis and Love that I was to be put upon the stand as the last witness for the plaintiff, and the question to be asked me what interest I had in the result of the suit tried at Greensburg.   My answer was to be, that I had no interest in the suit; that I was not a party.   I was not put on the witness stand; was angry because I had been treated in the manner I was; that if I had been put upon the stand, I could have explained the matter."

Again.   "I was going to Illinois, and, while at the depot, met Martin M. Ray; Ray said Blessing had requested him to get me to sign the appeal bond; I told Mr. Ray I would not do it; that they had deceived me; they had not put me on the stand, as per agreement, as a witness.   Mr. Ray said he was fully aware that I was not a party to the suit.   I told him that he knew the facts as to their using of my name without my knowledge or consent.   He said he was fully aware that I was not a party to the suit, and it was so understood by all the attorneys at the trial, and also by Mr. Blessing, that I was not a party to the suit."

Again.   " Claiming, from the fact (and it was so understood) that my name had been used without my knowledge or consent, that it was necessary to use my name, as I had been a party to the suit originally, he gave me the assurance that if I would sign the bond, I should be held harmless. I asked him to just write up, setting forth this fact, that I will be held harmless in the result, whatever it might be in this suit, then I would sign the bond, and we would sign the agreement.   He said it was not necessary to do that, but

gave the assurance that if I should sign the bond, Mr. Blessing could not harm me."

It is essential to the full comprehension of the question at issue, and the materiality of the evidence objected to, that we should make a statement of the facts and circumstances connected with the action against Blair.

In October, 1867, the appellant and appellee were partners in the manufacture of whiskey, in Shelby county, in this State, and were the owners of a small tract of land, upon which the distillery was situate. During such joint ownership, it was claimed that Blair had obstructed a water-course that flowed by the distillery and was essential to the successful operation thereof. Blessing and Dodds commenced, in the Shelby Circuit Court, an action against Blair to recover damages for such obstruction. The venue was changed, and the cause was sent to the Dearborn Circuit Court. While such cause was pending, the distillery and the premises connected therewith, were, by the agreement of the owners, sold at auction, and were purchased by Blessing. The partnership was dissolved, and a final settlement was made, and the action pending in the Dearborn Circuit Court was dismissed. Dodds went to the State of Illinois on business, and was absent some months. During his absence, Blessing formed a partnership with one Sayler, for the purpose of conducting such distillery. During the absence of Dodds, Blessing, by his attorneys, Ray, Davis and Love, commenced another action, in the name of himself and Dodds, against said Blair for said obstruction of said water-course. The venue was changed to the Decatur Circuit Court. When Dodds returned to Shelbyville, he heard of the institution and pendency of such action. The appellant instituted and prosecuted the present action upon the theory that the action against Blair had been prosecuted with the knowledge and consent of Dodds, and, to sustain such theory, he introduced in evidence the complaint against Blair, and the appeal bond in the appeal to the Supreme Court, which was signed by Blessing and Dodds as principals and others as

sureties, and proved that Dodds was present at the trial at Greensburg, and consulted with the attorneys prosecuting the action, and conversed with the witnesses ; and the appellant testified to various conversations with the appellee about said action. The defence was, that the action was commenced during the absence of Dodds from the State, and without his knowledge; that, when he heard of the pendency of the action, he protested against the use of his name, and threatened to employ counsel to dismiss the action as to himself; that, thereupon, it was agreed between Dodds and Davis and Love, attorneys for Blessing, that the action should be prosecuted in the joint names of Blessing and Dodds, upon the conditions that Dodds was to receive no benefit and was to incur no responsibility, and that he was to be examined as a witness, when he was to testify that he had no interest in the action, it being prosecuted in their joint names, but for the sole benefit of Blessing; that such agreement had been violated by not calling him as a witness; that he had signed the appeal bond upon the agreement with Mr. Ray that he would be fully indemnified by Blessing, and would incur no liability as a principal in such bond.

It is obvious that the real controversy on the trial was, whether Dodds was a real party in interest with Blessing, and therefore liable for his share of the costs and expenses of the action, or whether the action had been commenced with-. out his knowledge or consent, and he had afterwards consented that the action might be prosecuted in his name, for the sole benefit of Blessing, and without responsibility on his part, as between Blessing and himself, for the costs, attorneys' fees, and other expenses incident to the action.

It is contended by counsel for appellant, that the evidence hereinbefore set out was illegal and incompetent, for the reasons that appellant was not present at such conversations; that a party cannot prove his own declarations, or give them in evidence, to sustain himself in the prosecution or defence of a cause; that the representations, promises and assurances,

said to have been given to the appellee by Davis, Love and Ray of and concerning the trial of the action against Blair, had properly nothing to do with the case at bar; that they were not made or given in the presence of appellant, nor authorized by him, and that he was not bound thereby; in other words, that the declarations of the appellee did not constitute a part of the *res gestœ,* and were, therefore, mere hearsay; and that if they would have constituted a part of the *res gestœ* if they had been made to the appellant, the promises and assurances of his attorneys were not binding on him, because they were in no proper sense his agents, and could not bind him.

There is no question that it was competent for the appellee to detail the conversation which he had with Mr. Ray, in reference to the execution of the appeal bond, and the terms and conditions on which he had signed the same. The appellant testifies that he requested Mr. Ray to see the appellee and procure his signature to the appeal bond. Mr. Ray occupied a double relation to the appellant; he was not only his attorney in conducting his lawsuit, but he was his special agent. The conversation between the appellee and Mr. Ray had the same force and effect as though it had taken place between the appellant and the appellee.

The conversation between the appellee and Messrs. Davis and Love stands upon somewhat different ground. It does not appear from the evidence that the appellant had specially authorized either Mr. Davis or Mr. Love to hold any communication with the appellee, or that he had ratified the agreement which had been made in reference to the continued use of the appellee's name as one of the plaintiffs in said cause. Messrs. Davis and Love were confessedly the attorneys of the appellant, and, as such, had instituted said suit in the joint names of the appellant and appellee. Had the appellee remained absent from the State, and ignorant of the use which had been made of his name, he would not have been bound thereby; but when he returned and ascertained that his name had been used as a plaintiff, it became his

duty to disavow the act of those who had assumed to represent him, for silence, under such circumstances, would have created a strong presumption that his name had either been used with his knowledge and consent, or that he had acquiesced in such use. The appellee was compelled either to disavow or approve the acts of those who had assumed to act for him. *Pierce* v. *Goldsberry*, 35 Ind. 317. No one would doubt the competency of the evidence, if the conversation had occurred and the agreement had been made between the parties. *Ball* v. *Clark*, 15 Ind. 370. It would neither have been hearsay evidence nor *ex parte* declarations. Davis and Love were entrusted with the management of the action for and on behalf of Blessing, and, acting in that capacity, they had assumed to represent Dodds. He unquestionably had the right to repudiate their agency and action. His disavowal of their authority and action was proper and admissible. But his evidence goes further. He testified that he consented to the continued use of his name upon the terms and conditions named, and the question arises whether they had the authority to bind their client by their agreement with appellee.

After thoughtful consideration, we have arrived at the conclusion that notice to them was notice to their client, and that the use of his name afterwards was upon the terms and conditions stated, and, as they were not complied with, his name was used without his authority.

The learned counsel for appellant have cited many cases to show that a party cannot make evidence himself by proving his own declarations, which do not constitute a part of the *res gestæ*. The cases cited were where declarations were made by a party to his own agent, or to third persons, and such declarations were properly excluded. Here the facts are different, and the rule of law should be different.

We think the court committed no error in the admission of the evidence complained of.

The judgment is affirmed, with costs.