Michael Ray WEBB, Appellant,

v.

STATE of Indiana, Appellee.

No. 582S168.

Supreme Court of Indiana.

Sept. 12, 1983.

Rehearing Denied Nov. 7, 1983.

Steven C. Smith, Anderson, for appellant.

Linley E. Pearson, Atty. Gen., Latrialle Wheat, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

On September 15, 1981, Defendant-Appellant Michael Ray Webb was found guilty by a jury in the Madison Circuit Court of felony murder. He subsequently was sentenced by the trial judge to a term of forty years imprisonment. Appellant now directly appeals and raises the following issues:

1. whether the State was collaterally estopped from pursuing the instant prosecution;

2. whether the State was barred by statute from pursuing the instant prosecution;

3. whether Appellant's right to a speedy trial was denied;

4. whether the trial court erred by granting the State's Motion *in Limine* regarding evidence that Appellant previously was acquitted for the murder of Max Williams; and

5. whether the trial court erred by permitting evidence of Appellant's drug use.

At approximately 10:00 a.m. on May 9, 1980, Max and Margaret Williams were found murdered in their home at 121 Haverhill Drive, Yorktown, Indiana. Lucille Hodson and Brenda Thornburg had gone to the Williams home to investigate why neither Max or Margaret appeared for work. They found the garage door closed but unlocked and Mrs. Williams' car parked inside the garage with its trunk open. The door from the garage to the dining room was open. Mr. Williams' car was not parked where it usually was. Max Williams was found dead sitting in a chair in the family room and Margaret Williams was found dead lying on a bed with her hands and feet bound behind her with neckties. Hodson and Thornburg called the police. The coroner estimated that Max and Margaret died late at night on May 8. Both died from multiple stab wounds. Joan Morris, a coworker, testified that she talked with Margaret on the telephone at 9:30 p.m. on May 8. The police found empty jewelry cases scattered in the bedroom and other household items in disarray. Telephone cords had been cut in the bedroom and family room; approximately $100 in cash which Mr. Williams was known to have and his gold watch and wallet were not found on his body or elsewhere in the house.

At the time of the instant murder, Appellant was living in an apartment in Muncie with his girlfriend, Cindy Murphy, her two daughters and a friend, Gina Groce. Murphy was receiving $400 to $500 per month in Social Security benefits; Appellant was unemployed and had been so for at least one year. Both Murphy and Appellant had a history of using illegal drugs which Appellant supplied. Appellant's drug habit cost him as much as $60.00 a day. Murphy testified that she and Appellant argued on May 8 such that she called the police. Appellant left the apartment. They had exhausted their drug supply. Murphy further testified that when Appellant left on May 8, he had no money and was wearing blue jeans, a shirt, shoes and a jacket. At approximately 1:00 a.m. on May 9, Appellant called the apartment from a bar and asked Groce whether she could get him some drugs. Groce testified that she asked Appellant if he had any money; he told her he had "plenty of money." Groce arranged for drugs to be delivered to the apartment to which Appellant returned at 2:00 a.m. carrying some clothes under his arm and wearing clothes different from those he wore when he left the apartment. Appellant "dumped" approximately $20.00 in change onto the dining room table for Groce to count while he counted some bills. Appellant told Groce that he found the money and gave her $42.00 for the drugs. He gave Murphy some change to pay for a long-distance telephone call which he proceeded to place to his father in New Orleans. In said call, Appellant stated that he was in trouble, needed help and was going to New Orleans. At daylight on May 9, Appellant visited his mother at the home of his grandmother in Muncie and got money for a bus ticket to New Orleans. Appellant later returned to the apartment between 10:00 and 11:00 a.m. and unsuccessfully tried to sell a gold wristwatch to Groce's boyfriend, Jimmy Stewart. Appellant was wearing the watch when he arrived at the apartment early that morning. Groce had never seen Appellant wear a watch before that time.

Murphy testified at trial that Appellant told her that he and Arthur Morrison went to the Williams home to burglarize it. Appellant tied up Mrs. Williams with neckties and looked around for items to steal. Mrs. Williams told Appellant not to hurt her

since she was dying from cancer. Appellant then heard a noise and went to investigate it and came upon Mr. Williams sitting in a chair with blood all over him. Appellant then told Morrison that the killing was dumb, since Mrs. Williams could identify him. Morrison said that he would take care of "it" whereupon he ran into the bedroom and killed her. Appellant and Morrison attempted to put the house back in order and left. Appellant later gave these same details to the police.

## I

In the instant case, Appellant was tried and found guilty of the felony murder of Mrs. Williams. He had been tried previously in the Henry Circuit Court for the murder of Mr. Williams and was found not guilty. Specifically, he was tried and acquitted on the charge of having knowingly killed Max Williams, Ind.Code § 35–42–1–1(1) (Burns 1979). Ind.Code § 35–41–2–2(b) (Burns 1979) dictates: "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Appellant now contends that the State was collaterally estopped from prosecuting him for the felony murder of Mrs. Williams by his previous acquittal on the murder charge for Mr. Williams. Appellant's sole claim is that the ultimate issue of fact determined by the first jury was that Appellant was not present at the scene of these murders. The State contends, however, that the ultimate issue of fact determined by the first jury was that Appellant did not "knowingly" murder Max Williams and that the jury never determined that Appellant was not present at the murder scene.

We find persuasive the State's argument. Our examination of the evidence before the jury indicates that although the jury found Appellant not guilty of the murder of Max Williams, the jury did not determine whether or not Appellant was present at the murder scene and took part in the burglary and murder of Mrs. Williams. It is apparent from the evidence that Art Morrison killed Max Williams while Appellant was in a different part of the house and unaware of Max's presence. It also is apparent that the jury felt they could not hold Appellant responsible for Max's murder under those circumstances even though they were instructed that a person who aids or abets in the commission of a crime is responsible with the primary perpetrator. The trial court specifically instructed the jury that a person who engages in the commission of an unlawful act is legally responsible for all of the consequences which may naturally or necessarily flow therefrom. The only criminal act described in the instructions to the first jury, however, was that of knowingly murdering Max Williams. The first jury was neither instructed on burglary nor told that if Appellant aided or abetted in the commission of the burglary of Max Williams, he could be found responsible for the resulting murder of Max Williams.

The United States Supreme Court has held:

"'Collateral estoppel' is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit."

*Ashe v. Swenson,* (1970) 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469, 475. The application of the principle of collateral estoppel involves a two step process: (1) determine what the first judgment decided; and (2) examine how that determination bears on the second case. *United States v. Mespoulede,* (2d Cir.1979) 597 F.2d 329. *Ashe* further provided:

"Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the de-

fendant seeks to foreclose from consideration.'"

*Ashe,* 397 U.S. at 444, 90 S.Ct. at 1194, 25 L.Ed.2d at 475. Accordingly, it was Appellant's burden to prove that the first jury acquitted him of the murder of Max Williams because that jury resolved in his favor the very issue. Appellant now seeks to foreclose from consideration, namely that he was not present at the murder scene when these crimes were committed. We do not find that the trial court erred by holding that Appellant failed to carry his burden here. Taking into account the pleadings, evidence, and charge in this case, it is clear that the rational first jury could have grounded its verdict upon an issue other than that which Appellant now seeks to foreclose from consideration. The jury in the first trial reasonably could have found that Max Williams was knowingly killed by someone other than Appellant and that Appellant did not knowingly aid that other person when that other person knowingly killed Max Williams. The jury in the first case did not have to find as an ultimate fact that Appellant was not present at the scene of the burglary and killing of Margaret Williams. In the instant case, Appellant went to trial on the felony murder charge of killing Margaret Williams while committing burglary. The jury was instructed as follows:

"Under the charge of Murder in this information, the defendant is charged with the killing of a human being during perpetration of a burglary, it is the law in Indiana that all participants in a burglary which results in a killing are deemed equally guilty of the murder regardless of which participant actually killed the victim. Under the charge of murder in the commission of a burglary with which the defendant is charged in the information, it is not necessary for the State to prove the intent or purpose to kill. When the killing is accomplished in the perpetration of a burglary, the homicide is murder even though there is not an actual purpose or intent to kill. Before you may find the defendant guilty of murder as charged, however, the State must prove to you beyond a reasonable doubt that the defendant knowingly or intentionally participated in a burglary of the victim's home as charged in this case and that in the perpetration of the burglary the victim was killed by the means and in the manner as charged in the information."

We find no error on this issue.

## II

■ Appellant further moved to dismiss the instant felony murder charge claiming that the State was barred by statute from prosecuting him on it. Appellant specifically argued that the State was barred from bringing this action since this action was not joined with the cause charging Appellant with the murder of Max Williams pursuant to Ind.Code §§ 35–3.1–1–9 (Burns 1979) [repealed effective September 1, 1982], 35–3.1–1–10(c) (Burns 1979) [repealed effective September 1, 1982] and 35–41–4–4 (Burns 1979). The trial court denied Appellant's motion to dismiss. Although the cited statutes are somewhat ambiguous, we do not interpret them to mandate joinder in a situation such as the one now presented to us. The Court of Appeals has faced a similar claim and held:

"Apparently defendant recognizes that compulsory joinder of separate and distinct offenses arising from the same 'transaction' has never risen to the level of constitutional significance. He relies solely upon Indiana statutes for his claim that prosecution for this offense is barred because it was not joined in the earlier prosecution for leaving the scene of an accident.

Ind.Code § 35–3.1–1–9(a)(2) does provide that offenses 'can be joined' when they '[a]re based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan,' but this permissive language can hardly be construed as being mandatory.

Moreover, Ind.Code § 35–3.1–1–10(c) states that when two or more offenses *could* have been joined, the court shall grant dismissal 'if the prosecution is barred by reason of the former prosecu-

tion.' Thus, the failure to join related offenses is not *ipso facto* grounds for dismissal."

*Snodgrass v. State,* (1979) Ind.App., 395 N.E.2d 816, 818, *trans. denied.* Since we have already found that the State was not collaterally estopped from pursuing this action, we now find that the trial court properly overruled Appellant's motion to dismiss.

III

Appellant Webb contends that the trial court should have dismissed the charges against him in this case because his rights to a speedy trial were violated. U.S. Const. amend. VI; Ind. Const. art. I, § 12; Ind.R. Crim.P. 4(C). Appellant originally was charged on May 16, 1980, with.the murder of Max Williams. He was arrested on May 16, 1980. While a jury was deliberating over this first cause on October 31, 1980, the instant cause charging Appellant with the felony murder of Margaret Williams was filed. Another charge of murdering Max Williams was subsequently filed but the trial court dismissed it. Appellant now contends that the time period guaranteed by his speedy trial rights should begin as of May 16, 1980. The State meanwhile contends that since Appellant was not charged in the instant cause until October 31, 1980, Appellant's speedy trial time period should begin as of that date. We now find that the trial court correctly denied Appellant's motion to discharge according to either time frame.

■ The facts are as follow with respect to Appellant's rights under Ind.R.Crim.P. 4(C). On March 16, 1981, the Madison Circuit Court set Appellant's trial date for July 14, 1981, after both Appellant and his counsel represented to the trial court that they had no objections. On June 15, 1981, the trial date was changed to September 8, 1981, pursuant to Appellant's request. Since Appellant failed to object and, in fact, agreed to set his cause for trial first on July 14 and then on September 8, both dates beyond the date required by Ind.R.Crim.P. 4(C) if Appellant's time period is used, he waived any right he had under Ind.R. Crim.P. 4(C) to discharge for failure to receive a speedy trial. This Court has held that if a defendant sits idly by at a time when the trial court could grant him a trial within the proper time period and permits that trial court without objection to set a date beyond that period, he will be deemed to have acquiesced therein. *State ex rel. Engle v. Greene Circuit Court,* (1981) Ind., 421 N.E.2d 1108; *Little v. State,* (1981) Ind., 415 N.E.2d 44.

The record shows that Appellant moved for a change of venue from the county on July 10, 1980, since the State had indicated it would seek the death penalty. The requested change of venue was granted and the first cause was venued to the Henry Circuit Court. When the instant cause was filed on October 31, 1980, arraignment on it was set for November 6. On November 5, Appellant asked that said arraignment be continued and a continuance was granted until November 10. On November 10, Appellant asked for a second continuance and arraignment was reset for November 24. On November 24, Appellant asked for a third continuance which was granted until further order. The trial court thereupon questioned Appellant as to whether he had any objections to the continuance of his arraignment and hearing on his motion to set bond. Appellant advised the trial court that he had no objection. On December 16, 1980, Appellant filed his motion to dismiss; the State filed its response on January 9, 1981. The trial court held a hearing on Appellant's motion on January 21. On January 28, the trial court entered its negative ruling on Appellant's motion to dismiss and set arraignment for February 2. Arraignment was held on February 2 over Appellant's objection. This instant cause was then set for trial on April 13, 1981, without objection from Appellant. On February 10, 1981, Appellant filed his motion for change of venue. On February 13, said motion was granted and the instant case was transferred to the Madison Circuit Court. On March 16, Appellant was arraigned in the Madison Circuit Court and trial was set for July 14, 1981, without Appellant's objection.

On May 14, Appellant filed for a continuance and on June 9 Appellant's continuance was granted. On June 15, this cause was set for trial for September 8, 1981, with Appellant's approval. Trial commenced on September 8. At no time during the course of these proceedings did the State receive a continuance or cause any delay. Accordingly, the above indicated delays are all chargeable to Appellant when determining whether the delay attending Appellant's trial was unreasonable or in violation of his due process rights under our state and federal constitutions.

■ The State now contends that Appellant waived any due process arguments in regard to his speedy trial rights since he did not present due process issues to the trial court for decision. In his motion to dismiss of August 19, 1981, Appellant specified the following two grounds for seeking dismissal: double jeopardy and the State's denial of his right to a speedy trial as guaranteed by U.S. Const. amend. VI and Ind. Const. art. I, § 12. We already have decided the double jeopardy questions in the first two issues of this opinion. Although Appellant's motion to dismiss generally recited certain due process grounds mandating speedy trial, Appellant neither raised a specific due process issue before the trial court nor specifically presented a due process issue in his motion to correct errors. Appellant's motion to correct errors did recite, however, that he was denied a speedy trial as required by U.S. Const. amend. VI and Ind. Const. art. I, § 12. We therefore will decide this issue on its merits.

The United States Supreme Court has held that the speedy trial right serves to protect three interests. Specifically, those interests are to prevent oppressive pretrial incarceration, to minimize the accused's anxiety and to limit the possibility that the defense will be impaired. *Barker v. Wingo,* (1972) 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101. *Barker* further listed the following four factors as relevant to determining whether an accused has been denied his right to a speedy trial: 1) length of delay, 2) reason for delay, 3) accused's assertion of his speedy trial right, and 4) prejudice to accused. The record in the instant case shows numerous continuances granted Appellant and two changes of venue granted on Appellant's motion which caused significant delays in bringing this cause to trial. Moreover, the trial court's settings were not only made without Appellant's objection but were made with his agreement. Our Court of Appeals has held:

> "[D]elay between the time of a criminal occurrence and indictment may constitute a violation of due process where the defendant demonstrates that he has suffered actual prejudice ... and that there was no justification for the delay.... This court has required the defendant to demonstrate both elements in order to successfully raise a due process challenge." (citations omitted).

*Lusher v. State,* (1979) Ind.App., 390 N.E.2d 702, 704, *reh. denied.* Our Court of Appeals also has held:

> "Prejudice flowing from such a [pre-indictment] delay may be shown by the loss of a material witness or other missing evidence or fading memory caused by lapse of time."

*Worthington v. State,* (1980) Ind.App., 409 N.E.2d 1261, 1269, *trans. denied; see also Burress v. State,* (1977) 173 Ind.App. 286, 363 N.E.2d 1036.

■ Appellant here does not claim that he suffered by any certain lapse of time the loss of a material witness or of any other evidence or that there was some fading memory which particularly prejudiced him. Appellant's complaint really is that the State was allowed to try him again thereby convicting him. He does not specifically show that the State convicted him by way of any delay or other passage of time. Our Court of Appeals has held:

> "[T]he perimeters of the constitutional right [to a speedy trial] are not as distinct or inflexible as those provided by rule. Assessment of the constitutional right depends instead upon a consideration of the particular facts of a given case...."

*Cooley v. State,* (1977) 172 Ind.App. 199, 360 N.E.2d 29, 32, *trans. denied.* Considering

the particular facts and circumstances of this case, we find that the trial court did not err by denying Appellant's motion for discharge based on certain alleged violations of his speedy trial rights.

## IV

 Appellant next claims that the trial court erred by granting the State's motion *in limine* pertaining to evidence that Appellant was acquitted when previously tried for the knowing killing of Max Williams. The record shows that Appellant made no attempt during trial to introduce evidence of his prior acquittal and therefore did not preserve for appellate review any alleged error relating to that evidence. The granting of a motion *in limine* is not reviewable on appeal and a failure to offer the evidence involved during trial constitutes waiver of the issue. *Wilson v. State,* (1982) Ind., 432 N.E.2d 30; *Smith v. State,* (1981) Ind., 426 N.E.2d 364; *McCraney v. State,* (1981) Ind., 425 N.E.2d 151.

## V

Finally, Appellant claims that the trial court erred by admitting certain evidence of Appellant's use of illegal drugs. Appellant's use of drugs came into evidence through the testimony of Cindy Murphy, Appellant's girlfriend. The State contends that motive is always relevant in the proof of a crime. We agree. *Johnson v. State,* (1970) 254 Ind. 465, 260 N.E.2d 782. The evidence pertaining to May 8 and 9, 1980, showed that Appellant had a $60 per day drug habit, that his girlfriend also had a drug habit, that they were unemployed, that he had no drugs or money when he left the apartment, that he returned with money which he said he found and that he immediately used said money to purchase drugs which were then taken by himself, Murphy and another person. These facts establish a motive for the commission of the instant burglary and murder and accordingly were relevant to the trier of fact. Furthermore, these facts were admissible as evidence of acts within the *res gestae* exception to the rule that evidence of one crime is not admissible to prove another.

*Bond v. State,* (1980) Ind., 403 N.E.2d 812, *reh. denied; McCabe v. State,* (1979) Ind., 396 N.E.2d 895; *Thomas v. State,* (1975) 263 Ind. 198, 328 N.E.2d 212. Evidence of criminal activity other than that charged may, after all, be admitted to show intent, motive, purpose, identification or common scheme or plan. *Parker v. State,* (1981) Ind., 425 N.E.2d 628; *Choctaw v. State,* (1979) 270 Ind. 545, 387 N.E.2d 1305. The trial court clearly did not err by permitting the admission of this evidence.

Finding no error, we affirm the trial court in all things.

GIVAN, C.J., and HUNTER, DeBRULER and PRENTICE, JJ., concur.