**Ralph S. HOCKETT, II,
Appellant (Plaintiff),**

v.

**Preston T. BREUNIG and Richard Gilroy, Appellees (Defendants).**

**No. 49A02–8606–CV–195.**

Court of Appeals of Indiana,
Second District.

Aug. 8, 1988.

Rick C. Gikas, Merrillville, for appellant.

David C. Campbell, James L. Turner, Linda L. Kotis, Bingham Summers, Welsh & Spillman, Ralph A. Cohen, L. Alan Whaley, Ice Miller Donadio & Ryan, Indianapolis, for appellees.

BUCHANAN, Judge.

### CASE SUMMARY

Plaintiff-appellant Ralph S. Hockett, II (Hockett) seeks reversal of the trial court's grant of summary judgment on his legal malpractice claim in favor of defendants-appellees Preston T. Breunig (Breunig) and Richard Gilroy (Gilroy).

We affirm.

### FACTS

In 1980, Hockett was charged with murder,[1] burglary,[2] robbery,[3] and arson.[4] The State requested the death penalty. On August 25, 1981, before a scheduled suppression hearing, Hockett's court-appointed public defenders, Breunig and Gilroy, advised him to plead guilty in exchange for the prosecutor's promise to forego seeking the death penalty. The State also recommended that the sentence be thirty-five years on the murder charge and thirty years on each of the other charges, to be served concurrently. Hockett was sentenced on September 21, 1981, in accordance with the terms of the plea agreement. He had previously asserted his innocence and rejected an identical agreement.

By affidavit, Hockett asserted that Breunig and Gilroy told him they had viewed a pair of his tennis shoes in the State's possession with the victim's blood "all over them." *Record* at 243. Hockett claimed he told Breunig and Gilroy that it was impossible for any blood to be on any of his clothing unless the prosecutor put it there. Because Hockett became convinced he would be sentenced to death on the strength of this "manufactured" evidence, he decided to accept the plea agreement.

After entering the guilty plea, but before sentencing, Hockett learned his attorneys had a copy of a lab report prepared by the State of items of his clothing, including his shoes. Hockett repeatedly attempted to obtain a copy of this report from his attorneys, and even paid Breunig for a copy, but the report was withheld from him until after sentencing.

When Hockett finally obtained a copy of the lab report, the results revealed that "there was one small stain on the toe of the right tennis shoe that gave a positive preliminary test for blood; however, there was insufficient staining present to confirm the presence of blood and for further laboratory analysis." *Record* at 46. Hockett wrote Breunig and Gilroy inquiring about the blood. Breunig responded by letter on March 18, 1982: "With regards to your specific reference as to whether or not the blood found on your shoes was the same as the victim's blood type, I would have to review my entire file and notes, which I am not inclined to do at this time." *Record* at 247. Gilroy also wrote a letter to Hockett on March 16, 1982, which provided: "In

---

1. Ind.Code 35–42–1–1(2) (Supp.1987).

2. IC 35–43–2–1 (1982).

3. IC 35–42–5–1 (Supp.1987).

4. IC 35–43–1–1(a) (1982).

response to your letter I want to verify to you that the blood on the shoes was the same blood type as the victim." *Record* at 249. Both attorneys advised Hockett against attempting to withdraw his guilty plea.

Hockett filed his petition for post-conviction relief on May 9, 1983, alleging that his guilty plea was not entered knowingly, intelligently, and voluntarily, and that he was denied effective assistance of counsel. He specifically asserted that his attorneys "fabricated the story of the blood as a means to induce him to accept the plea offer." *Record* at 387. In entering judgment for the State on December 18, 1985, the post-conviction relief court found:

> "Mr. Breunig, Mr. Gilroy and Mr. Hill discussed with the petitioner the fact that a police laboratory report referred to a substance found on the petitioner's tennis shoes that tested positive for blood in a preliminary test, but could not be verified as blood in later testing because of an inadequate test sample."

*Record* at 429.

Pending Hockett's appeal of the denial of his claim for post-conviction relief, Hockett filed an action for legal malpractice against Breunig and Gilroy "based on claims that [they] negligently or recklessly misled [him] into pleading guilty to a crime he did not commit." *Record* at 219. When the trial court entered judgment for Breunig and Gilroy, Hockett appealed that adverse judgment to this court. While the malpractice action appeal was pending, a decision was rendered on Hockett's appeal of his post-conviction relief petition. In a memorandum decision,[5] this court affirmed the

post-conviction relief court's finding that (1) Hockett entered a knowing, voluntary, and intelligent guilty plea and (2) his counsel was not ineffective. *Hockett v. State* (1987), Ind.App., 507 N.E.2d 660.

In our opinion, we examined the issue of whether Hockett's attorneys misrepresented the results of the tests. This court found the evidence conflicting on this point, and sustained the post-conviction relief court's determination. We also concluded that even if Hockett's attorneys had misinformed him, the misinformation did not taint the voluntary and knowing entry of his plea in light of the other substantial incriminating evidence that Hockett knew existed against him.[6]

Before this court affirmed the denial of Hockett's petition for post-conviction relief, the trial court issued its order entering summary judgment for Breunig and Gilroy on February 18, 1986. The court's judgment provided as follows:

> "Court grants defendants' Motion for Summary Judgment, the Plaintiff having failed to establish the required violation of the professional standard of care by a competent professional opinion. Therefore, the Court finds no genuine issue of material fact as to the element of negligence or 'conspiracy.' Judgment entered for Defendants and against Plaintiff. Cost vs. Plaintiff. All other motions denied."

*Record* at 452.

### ISSUE

The only issue before us is whether the trial court properly granted summary judgment in favor of Breunig and Gilroy?[7]

---

5. The Indiana Supreme Court subsequently denied Hockett's Petition to Transfer.

6. The other incriminating evidence indicative of Hockett's guilt included several witnesses who saw Hockett at the scene of the crime and blood-splattered pillow cases that were found in Hockett's house; also, several items taken from the burglarized home were found in Hockett's possession after Hockett admitted to police that he had stolen the property. *Record of guilty plea hearing* at 151–62, 444, 494, 559.

7. Breunig and Gilroy were not parties to Hockett's post-conviction relief proceeding. We

therefore need not reach the question of issue preclusion as discussed by the parties in their briefs. Even if we did so, we would be bound by a long line of Indiana Supreme Court and Court of Appeals decisions requiring mutuality of estoppel and identity of parties. *See Tobin v. McClellan* (1947), 225 Ind. 335, 73 N.E.2d 679; *Hoosier Stone Co. v. Louisville, New Albany and Chicago Railway Co.* (1891), 131 Ind. 575, 31 N.E. 365; *Maple v. Beach* (1873), 43 Ind. 51; *State Farm Mut. Auto Ins. Co. v. Glasgow* (1985), Ind.App., 478 N.E.2d 918; *State v. Speidel* (1979), 181 Ind.App. 448, 392 N.E.2d 1172, *trans. denied.*

## DECISION

PARTIES' CONTENTIONS—Hockett maintains that because he established specific facts showing that Breunig and Gilroy violated their ethical obligation to be truthful during the course of their representation, the trial court improperly granted summary judgment.

Breunig and Gilroy respond that the trial court properly entered summary judgment in their favor because Hockett conceded at the summary judgment hearing that his legal malpractice claim would be barred if this court affirmed the denial of his petition for post-conviction relief.

CONCLUSION—The trial court properly granted summary judgment in favor of Breunig and Gilroy.

■ At the February 13, 1986, summary judgment hearing, Hockett's counsel made this statement:

"I think the more important issue is the uh, the motion for summary judgment based on the effect of the decision of the post conviction. On that I would brief uh, the Defendants, uh, *the decision in the post conviction matter is probably binding on this Court* uh, I think, I'm not sure that these standards for uh, negligence in a civil action are identical to the standards set out in Strickland, I think they're prob'ly close enough though, where uh, the distinction's no long [sic] all that relevant. *I think the decision in the post conviction relief matter will prob'ly bind this Court, which is why I have asked the Court to stay these proceedings until the uh, that, that judgment has been decided by uh, the Court of Appeals or the Indiana Supreme Court....*"

*Record* at 497–98 (emphasis supplied).

"[L]awyers engaged in litigation on behalf of their clients are generally considered to be agents of their clients with respect to that litigation...." *Solar Sources, Inc. v. Air Pollution Control Bd.* (1980), Ind.App., 409 N.E.2d 1136, 1138; *see also Campion v. State* (1927), 199 Ind. 129, 154 N.E. 802; *Blessing v. Dodds* (1876), 53 Ind. 95.

An attorney can make an admission that is binding upon his client. *Lystarczyk v. Smits* (1982), Ind.App., 435 N.E.2d 1011. Hockett's counsel concedes that the disposition of the post-conviction relief claim would bind the lower court and bar the legal malpractice action. In light of this concession, the judgment affirming the denial of his post-conviction relief claim bars his action for attorney malpractice.

■ We also reject Hockett's contention that the lower court should not have ruled on the motion for summary judgment regarding the attorney competence issues before this court decided his post-conviction relief appeal. In *Nill v. Comparet* (1861), 16 Ind. 107, our supreme court observed that "the only effect of an appeal to a Court of Error, when perfected, is to stay execution upon the judgment from which it is taken. In all other respects, the judgment, until annulled or reversed, stands binding upon the parties, as to every question directly decided." *Id.* at 109. Hockett's pending appeal of his post-conviction relief action did not alter the finality of that court's judgment. *See id.; see also In Re Estate of Nye* (1973), 157 Ind.App. 236, 299 N.E.2d 854, *trans. denied* (an Indiana judgment is clearly binding pending appeal). Hockett's allegation that it was improper for the trial court to grant summary judgment in the malpractice action prior to the disposition of the post-conviction appeal is without merit.

We also observe that even if Hockett did not make the concession, summary judgment was properly entered for Breunig and Gilroy because their conduct was not the proximate cause of Hockett's alleged damages. In attorney malpractice cases, negligence is actionable only when it is the proximate cause of the damages the plaintiff claims to have suffered. *See Nave v. Baird* (1859), 12 Ind. 318; *Fiddler v. Hobbs* (1985), Ind.App., 475 N.E.2d 1172, *trans. denied.*

■ Although Hockett contends that Breunig and Gilroy's advice caused his incarceration, the burden is on Hockett to prove that he would not have been incarcerated but for the allegedly negligent advice

provided by his attorneys. *See Palace Bar, Inc. v. Fearnot* (1978), 269 Ind. 405, 381 N.E.2d 858; *Haney v. Meyer* (1966), 139 Ind.App. 663, 215 N.E.2d 886, *trans. denied*. The decision to plead guilty rests with the defendant. *See Abraham v. State* (1950), 228 Ind. 179, 91 N.E.2d 358; *Lyles v. State* (1978), 178 Ind.App. 398, 382 N.E. 2d 991. Attorneys cannot enter guilty pleas for their clients and a defendant must satisfy the court that his plea was made knowingly, intelligently, and voluntarily. *See* IC 35–35–1–2, –3. Although we know of no relevant decided cases in Indiana, at least one jurisdiction has determined that summary judgment in favor of the attorney is proper if the criminal defendant-plaintiff acknowledges that his guilty plea was not induced or coerced. In *Hughes v. Malone* (1978), 146 Ga.App. 341, 247 S.E.2d 107, the Georgia Court of Appeals reasoned that:

> "Even assuming that Hughes was misinformed as to the severity of the potential sentence, the timing of the decision how to plead, and the ability to withdraw the plea once made if dissatisfied with the result, Hughes has not shown that except for the advice of Malone [the attorney] he would not have entered the plea of guilty. In fact, the record shows that Malone was insistent that the decision as to a plea be made by Hughes. When a defendant states on the record that his plea was not induced, he will not later be heard to claim the contrary."

*Id.* at 347, 247 S.E.2d at 112. As in *Hughes*, Hockett admitted at the guilty plea hearing that all facts contained in the information were true. Hockett acknowledged on the record that his plea was knowingly, intelligently, and voluntarily entered. *Record* at 391–92, 432. He is therefore precluded from asserting a contrary position in this malpractice action. *See Gaboury v. Ireland Road Grace Brethren, Inc.* (1983), Ind., 446 N.E.2d 1310 (contradictory testimony contained in an affidavit of the nonmovant may not be used by him to defeat a summary judgment motion when the only issue of fact raised by the affidavit is the affiant's credibility).

For all of the foregoing reasons, the trial court's grant of summary judgment in favor of Breunig and Gilroy is affirmed.

Judgment affirmed.

CONOVER, J., concurs.

SHIELDS, P.J., concurs with separate opinion.

SHIELDS, Presiding Judge, concurring.

I, too, vote to affirm the trial court's judgment. However, I disagree with the majority's rationales. Instead, I vote to affirm the trial court's judgment on the basis that the trial court properly applied the law of issue preclusion to bar Hockett's legal malpractice claim.

### I. Issue Preclusion in Indiana

Issue preclusion[1] is a doctrine designed to preclude unnecessary relitigation of issues. An explanation of this doctrine was supplied by the Indiana Supreme Court in *Town of Flora v. Indiana Service Corp.* (1944), 222 Ind. 253, 257, 53 N.E.2d 161, 163. Issue preclusion applies:

> [w]here the causes of action are not the same, but where some fact or question has been determined and adjudicated in the former suit, and the same fact or question is again put in issue in a subsequent suit between the same parties. In such cases the former adjudication of the fact or question, if properly presented and relied on, will be held conclusive on the parties in the latter suit, regardless of the identity of the causes of action, or the lack of it, in the two suits. When the second action between the same parties is on a different cause of action, claim, or demand, it is well settled that the judgment in the first suit operates as an estoppel only as to the point or question actually litigated and determined, and not as to other matters which might have been litigated and determined. In such cases the inquiry must always be as to

---

1. Issue preclusion is also referred to as collateral estoppel, as a branch of res judicata, and as estoppel by verdict or finding.

the point or question actually litigated and determined in the original action.

*Town of Flora* opines that issue preclusion is available only if an issue actually litigated and decided in the first suit is raised in a second suit. Our supreme court has stated:

> The application of [issue preclusion] involves a two-step process: (1) determine what the first judgment decided; and (2) examine how that determination bears on the second case.

*Webb v. State* (1983), Ind., 453 N.E.2d 180, 183, *cert. denied,* 465 U.S. 1081, 104 S.Ct. 1449, 79 L.Ed.2d 767; *State Farm Mutual Auto Ins. Co. v. Glasgow* (1985), Ind.App., 478 N.E.2d 918, 924. In *State Farm,* the judgment in the first action was for the plaintiff. However, the judgment was silent on whether the defendant's liability was predicated on negligent or intentional conduct. Therefore, this court held that State Farm, the insurer of the defendant in the first action, was not precluded from litigating the issue of the negligence of the defendant in the first action in the subsequent action by the successful plaintiff against State Farm. *State Farm,* 478 N.E.2d at 924–25. Similarly, in *Webb,* issue preclusion was held inappropriate because the issues in the multiple actions were not identical. Thus, in *Webb,* our supreme court held Webb could be prosecuted for the murder of the second of two victims although he had been acquitted of the murder of the other victim. The court hypothesized that the first jury could have reached its verdict on an issue other than the determination that Webb was not present at the murder scene.

Also, *Town of Flora* states that issue preclusion is available only in subsequent suits between the identical parties. However, the notion of identical parties has traditionally included privies. "A privy is one who, *after the commencement of the action,* has acquired an interest in the subject matter affected by the judgment through or under one of the parties, as by

inheritance, succession, or purchase." *Tobin v. McClellan* (1947), 225 Ind. 335, 344, 73 N.E.2d 679, 683. In addition, in determining the parties, modern cases look beyond the nominal parties and treat as parties those persons whose interests are involved.[2] As stated in Bigelow on Estoppel 145 (6th ed. 1913): "Identity of parties is not a mere matter of form, but of substance. Parties nominally the same may be in legal effect, different; and parties nominally different may be, in legal effect, the same." Thus, the identity of parties requirement has not been limited strictly to the denominated parties but has been expanded to include real parties as well as privies.

Mutuality is commonly recited as yet another requirement for the application of issue preclusion. *State v. Speidel* (1979), 181 Ind.App. 448, 453, 392 N.E.2d 1172, 1175. "Estoppel is mutual if the one taking advantage of the earlier adjudication would have been bound by it had it gone against him." *Tobin v. McClellan* (1947), 225 Ind. 335, 345, 73 N.E.2d 679, 683. However, the requirement of mutuality as a condition imposed by our supreme court to the application of issue preclusion is questionable. The supreme court cases upon which this court has relied as imposing the mutuality requirement concern the application of claim preclusion, not issue preclusion. *See e.g. Tobin,* 73 N.E.2d 679; *Hoosier Stone Co. v. Louisville, New Albany and Chicago Railway Co.* (1891), 131 Ind. 575, 31 N.E. 365; *Maple v. Beach* (1873), 43 Ind. 51; *Dayton v. Fisher* (1870), 34 Ind. 356. However, the fact remains that, inadvertent or not, this court has engrafted the mutuality requirement upon issue preclusion. *Speidel,* 392 N.E.2d 1172.

However, in the federal courts, as well as in most jurisdictions, there is no mutuality requirement.[3] In *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation* (1971), 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788, the United States

---

**2.** On occasion, persons who are real parties in interest have been included within an expanded definition of privies. *See e.g. In Re Estate of Nye* (1973), 157 Ind.App. 236, 299 N.E.2d 854.

**3.** 1B *Moore's Fed.Prac.* 0.441[2], 0.441[3.–2] (1984).

Supreme Court ruled that an action which established a patent's validity provided a defense in subsequent actions regarding the same patent. In so ruling, the requirements of mutuality and identity of parties were abandoned by the court, at least as to the party asserting issue preclusion defensively.[4] The recognized goal was "limiting relitigation of issues where that can be achieved without compromising fairness in particular cases." *Id.* at 328, 91 S.Ct. at 1442. Thus misallocation of resources can be prevented. *Id.* To that end "determining whether the party against whom estoppel is asserted had a full and fair opportunity to litigate is a most important safeguard." *Id.* at 329, 91 S.Ct. at 1443. This determination requires a consideration of such factors as whether the party against whom issue preclusion is asserted 1) had a choice of forum, 2) had the incentive to litigate, 3) is subject to the same standards in the second litigation, or 4) was deprived of crucial evidence or witnesses in the first litigation without fault of his own. But the court said there is no "automatic formula" and the "decision will necessarily rest on the trial court's sense of justice and equity." *Id.* at 333–34, 91 S.Ct. at 1445.

Indiana, too, has recognized a defensive exception to the requirements of mutuality and privity, "namely, that they are not necessary where the liability of the defendant ... is dependent on or derived from the liability of one who was exonerated in an earlier suit by the same plaintiff on the same facts." *Mayhew & Huston v. Deister* (1969), 144 Ind.App. 111, 122, 244 N.E.2d 448, 454; *Speidel*, 392 N.E.2d at 1177 n. 6. The *Mayhew* court cited typical examples of such derivative liability as "master and servant, principal and agent, and indemnitor and indemnitee." *Mayhew*, 244 N.E.2d at 454; *Glass v. Continental Assur. Co.* (1981), Ind.App., 415 N.E.2d 126, 128. Thus this exception allows defensive use of issue preclusion when a defendant's liability is dependent on or derived from the liability of one who was exonerated in an earlier suit and, accordingly, is limited to defendants sharing some sort of mutually dependent relationship.

A recent case by this court indicates that Indiana may be willing to carve out other exceptions to its mutuality and identity of parties requirements for defensive use of issue preclusion. In *Turner v. Estate of Turner* (1983), Ind.App., 454 N.E.2d 1247, Turner shot and killed his parents but was found not guilty of their murders by reason of insanity. The administratrices of the parents' estates subsequently sought to terminate Turner's right to receive his intestate share. The trial court entered judgment in favor of the estates and ordered that Turner serve as constructive trustee of his intestate share, and that he not receive any benefit from his parents' death. This court reversed reasoning that, since Allen committed no legal wrong, the equitable doctrine barring a person from profiting from his wrongful conduct did not apply. Although the holding was not based on issue preclusion, the court noted:

Generally, the results reached in criminal proceedings are not considered *res judicata* in civil cases, in part, because of the difference in the burden of proof.... However, at the time of Allen's criminal trial he had the burden of establishing

---

4. *Blonder–Tongue* addressed defensive use of issue preclusion. The defensive limitation was later abandoned, permitting a nonparty plaintiff to estop a losing defendant. *Parklane Hosiery Co. v. Shore* (1979), 439 U.S. 322, 332–33, 99 S.Ct. 645, 652–53, 58 L.Ed.2d 552. The *Parklane* court, following *Blonder–Tongue*, said the purposes of issue preclusion are "protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Id.* at 326, 99 S.Ct. at 649.

The court conceded that offensive use of issue preclusion is more problematic than defensive use. For example, offensive use of issue preclusion may increase litigation "since potential plaintiffs will have everything to gain and nothing to lose by not intervening in the first action." *Id.* at 330, 99 S.Ct. at 651. Offensive use of issue preclusion could also be unfair to a defendant who did not have a great incentive to litigate in the first action, or where the procedural opportunities differ in the two actions in a way that might cause a different result. *Id.* at 330–31, 99 S.Ct. at 651. The court nevertheless concluded that the preferable approach is not to prohibit use of offensive issue preclusion, but to allow the trial court discretion to apply it when it would not be unfair to the defendant. *Id.* at 331, 99 S.Ct. at 651.

his insanity by a preponderance of the evidence, ... the same being true in the instant case. While neither party raises the issue, we note that the doctrine of collateral estoppel may well have been applicable under the present circumstances inasmuch as the issue and burden of proof were identical in both the criminal and civil proceedings.

*Id.* at 1248–49 n. 2. This language demonstrates this court's willingness to further consider issue preclusion without identity of parties and without mutuality. The instant case presents compelling circumstances for further reconsideration of the necessity of requiring identity of parties and mutuality in that limiting relitigation of issues can be achieved without them without compromising fairness.

## II. Precluding Legal Malpractice Claims

Several jurisdictions have invoked the doctrine of issue preclusion to bar litigation of a legal malpractice claim.

The Court of Appeals of New York held a party who unsuccessfully attempted to vacate his guilty plea on grounds that his plea was involuntary and pressured by counsel was precluded from relitigating these issues in a legal malpractice claim. *Vavolizza v. Krieger* (1974), 33 N.Y.2d 919, 352 N.Y.S.2d 919, 308 N.E.2d 439. The court found the substance of the malpractice action was that the "plaintiff was literally forced into the guilty plea by defendant [his defense counsel] and plaintiff was not guilty and never wanted to plead guilty." *Id.* 352 N.Y.S.2d at 922, 308 N.E. 2d at 441. Because these allegations were identical to those decided on the merits against the plaintiff in his prior proceeding to vacate his guilty plea where he had a full and fair opportunity to prove them, the Court of Appeals of New York invoked the doctrine of issue preclusion to bar his legal malpractice claim.

An alternative use of issue preclusion to bar a legal malpractice claim is illustrated by another New York case, *Carmel v. Lunney* (1986), 119 App.Div. 50, 505 N.Y. S.2d 735. In this case the court held a defendant who pled guilty to a securities law violation could not maintain a malpractice action against his attorneys because his unattacked guilty plea precluded him from establishing that his attorneys' malpractice was the proximate cause of his damages.

A Texas appellate court found that a defendant who unsuccessfully appealed his conviction on grounds of ineffective assistance of counsel was estopped from asserting legal malpractice in a subsequent action. *Garcia v. Ray* (1977), Tex.Civ.App., 556 S.W.2d 870. The court found that both actions involved the same adjudicated question. The court noted:

The standard of proof generally in a criminal case is usually different than in civil actions. However, on the other hand, how could you test the adequacy of counsel any better than by having the direct point determined by the highest court of our State in the related criminal case?

*Id.* at 872.

The District of Columbia Circuit has applied issue preclusion to bar a legal malpractice action. *McCord v. Bailey* (1980), D.C.Cir., 636 F.2d 606. In *McCord,* a convicted Watergate burglar sued his defense attorney for malpractice, conspiracy to represent him incompetently, and conspiracy to deprive him of his civil rights. McCord had previously and unsuccessfully raised the same malpractice allegations in a coram nobis petition and in an appeal of his conviction. Summary judgment for the attorneys on the malpractice claim was affirmed on grounds of issue preclusion because the contentions were the same, the legal standards for proving ineffective assistance of counsel and malpractice were equivalent, and the ineffective assistance claim was actually litigated in a proceeding where McCord had every incentive to aggressively argue the ineffectiveness of his counsel and had a full and fair opportunity to do so. The court said "a hearing now would amount to little more than a 'useless ritual' ", *Id.* at 610, and concluded, "Having twice raised these issues and lost, McCord

cannot raise the claims anew in a civil case." *Id.* at 611.[5]

In sum, these cases recognize issue preclusion in malpractice claims because issues of negligence, causation or injury have been negated by prior judgments. Critically, issue preclusion was deemed appropriate without identity of parties or mutuality. We, too, deem the doctrine appropriate if the party against whom it is asserted had a full and fair opportunity to litigate the issue.

### III. Hockett's Claim

There is an identity of issues in Hockett's legal malpractice claim and his post-conviction relief proceeding: the alleged ineffective assistance of Hockett's counsel, Breunig and Gilroy. Following *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, our supreme court has applied a two-step analysis in reviewing claims of ineffective assistance. Under the first step, "the defendant must demonstrate that the alleged acts or omissions by counsel fell outside the wide range of competent professional assistance." *Richardson v. State* (1985), Ind., 476 N.E.2d 497, 501. This step has also been referred to as applying the standard of "reasonably effective assistance." *Burr v. State* (1986), Ind., 492 N.E.2d 306, 308. The second step is the prejudice component: "the defendant will be entitled to relief only if the reviewing court determines that counsel's errors had an adverse effect upon the judgment." *Richardson*, 496 N.E.2d at 501, *Burr*, 492 N.E.2d at 306.

On the other hand, the elements for a cause of action for legal malpractice are:

1) the employment of the attorney (the duty);
2) the failure of the attorney to exercise ordinary skill and knowledge (the breach); and
3) that such negligence was the proximate cause (causation);
4) of damage to the plaintiff (damage).

*Fiddler v. Hobbs* (1985), Ind.App., 475 N.E. 2d 1172, 1173.

The first step of the *Strickland* standard and the breach element of legal malpractice are identical, *i.e.*, counsel must act reasonably. In addition, the second step in the *Strickland* standard, prejudice, and the causation element of a malpractice claim are identical. Further, the burdens of proof applicable to a post-conviction relief petition and a legal malpractice claim are identical. Both are civil proceedings using a preponderance of the evidence standard. Hence, Hockett's post-conviction relief proceeding and his malpractice claim meet the same standard factor of the *Blonder–Tongue Laboratory* test of fairness with which I agree. In addition, although Hockett did not have his choice of forum, his incentive to litigate his relief claim was certainly as great, if not greater, in his post-conviction relief proceeding than his incentive to litigate his malpractice claim. The fourth factor, deprivation of crucial evidence or witnesses without fault in the first litigation, is not an issue. Thus, we can only conclude that Hockett had a full and fair opportunity to litigate his claim at his post-conviction relief hearing. He had his day in court.

Accordingly, fairness dictates that a limited deviation from the doctrines of mutuality and identity of parties be applied in this case to bar Hockett from relitigating the issues of negligence and proximate cause in his legal malpractice action against Breunig and Gilroy. Therefore, the trial court properly granted judgment against Hockett.

---

5. Arizona follows the *McCord* holding regarding issue preclusion. Thus an ineffective assistance of counsel claim, which was determined adversely to the client in his motion for new trial of the criminal case, cannot be reasserted in a malpractice action. *King v. Superior Court* (1983), Ariz., 673 P.2d 787, 791 n. 4.