## JOHNSON v. BRADY ET AL.

[No. 8,627. Filed June 15, 1915. Rehearing denied November 2, 1915. Transfer denied January 26, 1916.]

1. APPEAL.—*Questions Reviewable.—Motion for New Trial.—Affidavits.*—No question is presented on the ground of a motion for new trial challenging the competency of a juror, where neither the affidavits supporting such challenge, nor their substance, is set out in appellant's brief. p. 558.

2. APPEAL.—*Briefs.—Sufficiency.*—Though appellant's brief does not set out the evidence in narrative form in strict compliance with Rule 22, clause 5, it will be sufficient to present the question of the sufficiency of the evidence, where it appears that there is a substantial compliance and a good-faith effort at full compliance with such rule. p. 558.

3. MALICIOUS PROSECUTION.—*Action.—Essential Elements.—Prosecution by Indictment.*—To entitle plaintiff to recover in an action for malicious prosecution, where the prosecution complained of was commenced by indictment, the return of the indictment must be

shown and it must be made to appear that defendant instigated or procured and caused the return of the indictment, and that the prosecution was without probable cause, was malicious, and was terminated by the discharge of plaintiff. p. 559.

4. MALICIOUS PROSECUTION.—*Action for Prosecution by Indictment.—Evidence.—Sufficiency.*—In an action for malicious prosecution commenced against the plaintiff by grand jury indictment, evidence showing a dispute involving the ownership of corn fodder and that at the time of such dispute defendant threatened to submit the matter to the grand jury, that almost a year thereafter a grand jury investigation was begun which resulted in the indictment of plaintiff for grand larceny, but not showing that defendant had anything to do with actually instituting or beginning the prosecution, or that he had any knowledge that it was to be begun, or that he was in any way voluntarily connected therewith, was insufficient to support a verdict for plaintiff. pp. 559, 564.

5. MALICIOUS PROSECUTION.—*Parties.—Joint and Several Liability.*—All persons concerned in originating and carrying on a malicious prosecution are jointly and severally liable in an action to recover damages therefor. p. 564

6. MALICIOUS PROSECUTION.—*Liability.—Procuring Indictment.*—While defendant in an action for malicious prosecution may be liable, though he was not the originator of the proceedings complained of, if he voluntarily participated in and countenanced and approved the prosecution, his mere acquiescence would not make him liable, and it must be shown that he did some affirmative act in connection with such prosecution. p. 564.

7. APPEAL.—*Verdict.—Evidence to Support.*—A verdict will not be upheld which must rest on mere conjecture or speculation. p. 566.

From Superior Court of Marion County (87,502); *Charles J. Orbison*, Judge.

Action by George W. Brady against Franklin P. Johnson and others. From a judgment for plaintiff, the defendant named appeals. *Reversed.*

*Lee Moffett, E. W. Johnson* and *Myers & Fenton*, for appellant.

*Charles T. Hanna* and *Thomas A. Daily*, for appellee.

HOTTEL, J.—Appellee, George W. Brady, brought this action against appellant and his coappellees to recover damages for an alleged malicious prosecution. Appellant assigns several errors, but the rul-

ing on his motion for new trial is the only one discussed in his brief. The only grounds of this motion attempted to be presented are : (1) the verdict is not sustained by sufficient evidence; (2) the verdict is contrary to law; and (3) one of the jurors of the jury which tried the case was incompetent to sit as a juror. Appellant's briefs show that this last ground of his motion was supported by affidavits and that counter affidavits were filed thereto. Neither

1. of these affidavits, nor the substance thereof, is set out in appellant's brief, and hence as to such ground of his motion no question is presented. *Price* v. *Swartz* (1912), 49 Ind. App. 627, 97 N. E. 938; *Schrader* v. *Meyer* (1911), 48 Ind. App. 36, 95 N. E. 335; *Taylor* v. *Schradsky* (1912), 178 Ind. 217, 97 N. E. 790.

It is also very earnestly insisted by appellee, Brady, that appellant, on account of his failure to comply with subd. 5, Rule 22 of this court, has

2. presented no question by the first and second grounds, *supra*, of his motion. While such briefs may be subject to criticism, in that they fail to set out in narrative form the evidence of each particular witness as some of the decisions would seem to indicate is required by the rule relied on, they indicate a good-faith effort to comply with the rules of the court and show such substantial compliance therewith as entitles appellant to a consideration of the sufficiency of the evidence to sustain the verdict. *Geisendorff* v. *Cobbs* (1911), 47 Ind. App. 573, 94 N. E. 236; *Pittsburgh, etc., R. Co.* v. *Broderick* (1914), 56 Ind. App. 58, 102 N. E. 887; *Ditton* v. *Hart* (1911), 175 Ind. 181, 93 N. E. 961; *Nave* v. *Powell* (1913), 52 Ind. App. 496, 96 N. E. 395.

In actions for malicious prosecution where, as in this case, the prosecution was by indictment, five

elements are essential and must be proven be-
3. fore the plaintiff will be entitled to recover, viz.,
(1) the return of the indictment must be
shown; (2) the person charged with such prosecu-
tion must have instigated or procured and caused
the return of the indictment on which the prosecu-
tion proceeded, as hereinafter indicated; (3) such
prosecution must have been without probable cause;
(4) the prosecution must have been malicious; (5)
the prosecution must have terminated in the dis-
charge of the accused. *Sasse* v. *Rogers* (1907),
40 Ind. App. 197, 199, 81 N. E. 590. See, also,
*Bitting* v. *Ten Eyck* (1882), 82 Ind. 421, 423, 42
Am. Rep. 505; 19 Am. and Eng. Ency. Law
(2d ed.) 653.

It is insisted by appellant that in this case there is
a total failure of evidence to prove either the second,
third or fourth elements, *supra*. We address
4. our inquiry, first, to whether there is any evi-
dence to support the second element. Upon
this element, the only evidence disclosed by the
record which can be said to throw any light thereon
is in substance as follows: Brady, hereinafter re-
ferred to as "B." rented from appellant Johnson,
hereinafter referred to as "J.", twelve acres of
ground for corn. By their contract B. was to fur-
nish the seed and put the ground in corn for one-
half of the crop of fodder and corn. B. was to
shuck and crib J.'s half and leave the stalks stand-
ing in the field. The corn was planted and produced
a crop. B. had his part cut up. A week or ten days
after B.'s corn was cut up, J. called B. over the
phone and wanted B. to cut up his, J.'s, part of the
corn. Here the evidence presents a conflict. B.
claimed at the trial that when J. called him, he, B.,
told him he didn't have the time to cut the corn;
that J. replied, "Why, B., I will release you from the

shucking of the corn if you will cut it." B. said, "No, sir, I will not do that, it takes five times as long to shuck it out as it does to cut it off the stalk;" that J. said, "Oh, well, you do it." B. said, "Well, I don't know, but I will tell you in a minute." That B. after he spoke to the man standing by the side of him he turned around and said, "If I can get somebody to cut the corn for me, I will cut it for the fodder, but I will not cut it any other way." To this J. replied, "that is all right, B., that is an accommodation to me if you will do it, just go ahead and do that and you can have the fodder. I don't want it. I don't have any use for it." That B. went out next day and got two colored men to cut up the corn and put it in the shock, and called up J.'s house and Mrs. J. answered and he left word with her that he had got two men to cut the corn and that they would be there the next morning. J. testified on the subject of the change of their original contract, substantially as follows: That he called B. up and told him that he had sold the land and the purchaser wanted the field so it could be sown in wheat and grass and that, if B. would cut J.'s share of the corn he would release him from shucking and cribbing it; that B. said he would let him know, and in a few days did call up the house and told Mrs. J. to tell him (J.) that he accepted his proposition.

After this new arrangement between J. and B., viz., in the early part of December, J. contracted with a Mr. Means (hereinafter referred to as M.) to husk and crib the corn out of J.'s part of the fodder in question, it being agreed between J. and M. that M. should have the fodder for his work of husking and cribbing. Pursuant to this arrangement M. husked the fodder and set it up in the field. B. knew this was being done and after it was done sent his em-

ploye, Estay Moran, to haul the fodder away, which was done. B. testified, in substance, that the day before the fodder was hauled away, Moran had been to the field and brought word to B. that some one was hauling this fodder away; that he, B., at once called up J. on the phone and said to him: "Mr. J., are you giving or selling any of the fodder away?" That J. replied, "I am not giving any of it away"; that he, B., then said, "Where did you get any of it?" That J. replied, "One-half of it belongs to me," to which B. replied, "You gave the fodder to me for the cutting of it"; that J. said, "it don't make any difference, for I have given it to another man to shuck it out"; that B. said, "All right, I will show you." According to J.'s testimony, he left for the poultry show at Chicago on December 9, 1910, before M. had completed husking and cribbing the corn, and when he returned on the morning of December 15, the fodder had been all taken away. The next morning M. came over and told him the fodder was gone; that they went to the house, called up B. and he, B., said he had taken the fodder himself. As to this conversation over the phone B. testified that J. said: "B., I will have you before the grand jury and I will make it (the fodder) cost you more than it is worth," and that he replied, "To h—l with you and your grand jury." After this conversation and after B. had taken away all the fodder M. called up B. by phone and asked him what he was going to do about the fodder. B. replied he was going to do nothing about it. A day or so later B. had a conversation with M. and asked him what he meant by calling him up over the phone, and M. replied that he didn't mean anything only he wanted him to pay him, and said, "George (B.), I am going to have my corn and if I can not get it I

am going to start the ball rolling," and B. replied "go ahead." Soon after this conversation M. commenced suit before Squire Howe at Broad Ripple, for damages for conversion of the fodder in question, and on January 13, 1911, recovered a judgment for $25. At this trial M. was represented by David A. Myers as his attorney whom he had known for a couple of years, and B. appeared in person without an attorney. Myers also appears as one of the attorneys for appellant in the instant case. Mr. and Mrs. J. both testified as witnesses for M. at this trial. An execution was issued on the judgment recovered by M. and the return showed that it was read to B. on February 18, 1911; that he claimed no property; that on July 27, 1911, a levy was made on seven acres of growing corn, and on August 11, 1911, there was a sale of sufficient amount to pay the judgment. This levy was made on instruction from M. Mrs. B. claimed this corn and when the levy was made she informed the constable the corn belonged to her. After this sale M. started to cutting up the corn. Mrs. B. ordered him and the man he employed off the premises and informed them that she owned the corn. Mr. and Mrs. B. threatened to swear out a warrant for the arrest of M. M. got only about a half of a shock of this corn. After the above occurrences M. went to Broad Ripple in September, 1911, to file an affidavit for the arrest of B. Whitehead, the constable, and the squire told him to go before the grand jury. On the next day and in the month of September, 1911, M., in company with Mr. Howe, the justice of the peace, appeared before the grand jury to present a case against B. M. gave the prosecutor the names of Platt Whitehead and J. as witnesses whom he desired to have called. J. and his wife were then out of the State, and they were out of the State from

June, 1911, until the first week in October, 1911, and
when they returned to the State J. was served with a
subpoena to appear before the grand jury. There-
after an indictment for grand larceny was returned
by the grand jury charging B. with the theft of 105
shocks of fodder, the property of M. The indict-
ment was filed October 20, 1911, and contained the
indorsement of the names of Means, Whitehead,
Styer, and J. as the State's witnesses. B. was ar-
rested upon this charge October 31, 1911, taken to
jail and there confined from 4 p. m. until 11 p. m.,
at which time he was released on a $1,000 bond.
The case was called for trial in the criminal court on
the fifth or sixth of January, 1912. J. was sub-
poened as a witness and testified in behalf of the
State. J. testified (in the instant case) that while
he and his wife were out of the State they were in
Alaska; that during such period he had no knowledge
as to what M. had been doing and knew nothing
thereof until his return, the first week in October.
After Mr. and Mrs. J. returned, B. and his wife, M.
and a Mr. Stout, went over to J.'s house. After J.
had told them about his trip B. tried to get J. to pay
to M. one-half of his expenses, he, B., agreeing
to pay the other half. J. declined to do this. B.
then made a statement to the effect that J. and Mrs.
J. had misrepresented him at the trial before jus-
tice Howe. J. told B. that they had discussed that
before and he did not care to go over it again and in-
vited him out of the house. Shortly after this oc-
currence J. appeared before the grand jury as a wit-
ness in response to a subpoena to appear, and the in-
dictment was returned on which the criminal prose-
cution was based. J. testified (in the instant case)
that he in no way counseled or approved the pro-
ceedings brought by M. before squire Howe, or
the grand jury, and M. testified, in effect, that he

himself on his own initiative, started the criminal proceedings.

We are unable to find in this evidence any item thereof or any number of items which, upon any reasonable construction, would justify an inference that appellant instigated or was in any way responsible for the instigation of the prosecution here involved. It is true, that in a malicious prosecution all concerned in the originating and carrying it on, are jointly and severally responsible. *Smith* v. *Graves* (1915), 59 Ind. App. 55, 108 N. E. 168; 1 Cooley, Torts (3d ed.) 342; 19 Am. and Eng. Ency. Law (2d ed.) 692. It is also true that it is not necessary to prove that the defendant was the originator of the proceedings complained of. "If he participated *voluntary* in the malicious prosecution, and it was carried on with his countenance and approbation, he will be liable. Some affirmative act on the part of the defendant in connection with the prosecution must, however, be shown. Mere acquiescence therein is not sufficient." 19 Am. and Eng. Ency. Law (2d ed.) 692. See, also, *McClarty* v. *Bickel* (1913), 155 Ky. 254, 159 S. W. 783, 50 L. R. A. (N. S.) 392; *Louisville, etc., R. Co.* v. *Stephenson* (1912), 6 Ala. App. 578, 60 South. 490; *Magowan* v. *Rickey* (1900), 64 N. J. L. 402, 45 Atl. 804; *Hurd* v. *Shaw* (1858), 20 Ill. 355; *Klug* v. *McPhee* (1901), 16 Colo. App. 39, 63 Pac. 709; *Chambliss* v. *Blau* (1899), 127 Ala. 86, 28 South. 602; *Breneman* v. *West* (1899), 21 Tex. Civ. App. 19, 50 S. W. 471.

The most that can be said from the evidence, *supra*, is that it shows, according to appellee, Brady's testimony, that on an occasion almost a year before the grand jury investigation was begun, appellant expressed an intent to bring appellee before the grand jury. This

item of evidence standing alone does not prove and would not justify an inference that appellant instituted or had anything to do with the return of the indictment on which B. was prosecuted nearly a year later. Such item, in connection with appellant's unexplained presence before the grand jury, and the return of an indictment thereafter, might justify such inference. We have therefore set out substantially all of the evidence affecting such question, not with a view of weighing it, but to show that this item of evidence, when considered with the undisputed facts in connection with appellant's presence before the grand jury, will not authorize the inference. There is not an item of this evidence that shows that he had anything to do with actually instituting or beginning the prosecution which resulted in the return of the indictment on which B. was prosecuted, or that he had any knowledge that it was to be begun, when begun. On the contrary M. expressly assumed responsibility for instituting the investigation before the grand jury and says, in effect, that J. was then out of the State, and J. says that his only connection with the prosecution was his appearance before the grand jury in response to a subpoena. There is not an item of evidence that shows or tends to show that J., in any way, aided or advised, or directed, the prosecution in any manner, or that he was in any way *voluntarily* connected therewith. Under the authorities, *supra*, such voluntary connection must be shown. Mere silent acquiescence is not sufficient. However, it is contended by appellee, Brady, in effect, that the jury had a right to infer that, but for appellant's testimony before the grand jury, the indictment would not have been returned, and that the jury also had a right to believe that such testimony of appellant was false and hence that the in-

dictment was procured by appellant's false testimony before the grand jury.

There is some conflict in the authorities as to whether such evidence is admissible, especially where, as in this case, the complaint contains the general averment only, that the defendant "maliciously and without probable cause" procured and caused the return of the indictment, without averring specifically that the defendant falsely testified before such grand jury, and thereby obtained the return of the indictment. *Henderson* v. *McGruder* (1912), 49 Ind. App. 682, 687, 98 N. E. 137. See *Brown* v. *City of Cape Girardeau* (1886), 90 Mo. 377, 2 S. W. 302, 59 Am. Rep. 28; *Wilkerson* v. *McGhee* (1912), 163 Mo. App. 356, 143 S. W. 1198. Whether such averment in the complaint is necessary to entitle appellee to show appellant's testimony before the grand jury is not important in this case, because not only is the averment absent from the complaint, but the record does not disclose what appellant testified to before the grand jury. The only thing disclosed by the record on this subject is the testimony of the appellant to the effect that he did not testify before such grand jury that appellee stole the fodder in question. It follows that the jury could only speculate, or conjecture, as to what appellant's testimony was before the grand jury, and hence was not warranted in finding that the return of the indictment in question was caused or procured by appellant's false testimony. A verdict will not be upheld which

7.   must rest on mere conjecture or speculation. *Pittsburgh, etc., R. Co.* v. *Vance* (1915), 58 Ind. App. 1, 108 N. E. 158; *Murphy* v. *Boston, etc., R. Co.* (1896), 167 Mass. 64, 44 N. E. 1087; *Clare* v. *New York, etc., R. Co.* (1896), 167 Mass. 39, 44 N. E. 1054. We therefore conclude that as to the sec-

NOVEMBER TERM, 1915    567

Bluffton, etc., Co. *v.* Moore-Mansfield, etc., Co.—60 Ind. App. 567.

ond element, *supra*, necessary to entitle appellee to recover, the verdict of the jury is not sustained by sufficient evidence and that for this reason the court below erred in overruling the motion for new trial. The judgment below is therefore reversed with instructions to the trial court to sustain appellant's motion for new trial and for any other proceedings consistent with this opinion.

NOTE.—Reported in 109 N. E. 230. As to basis of right of action for malicious prosecution, see 93 Am. St. 454. See, also, under (1) 3 C. J. 1420; 2 Cyc 1014; (2) 3 C. J. 1418; 2 Cyc Ann. 1013; (3) 26 Cyc 10, 17, 20, 47, 55; (4) 26 Cyc 85; (5) 26 Cyc 68; (6) 26 Cyc 17; (7) 3 Cyc 351.