## HANEY V. MEYER.

[No. 20,241. Filed April 28, 1966. Rehearing denied
June 1, 1966. Transfer denied December 6, 1966.]

664

*Richard F. Joyce,* and *Kizer and Neu,* of Plymouth, for appellant.

*Dale E. Custer,* of Gary, and *Stevens & Wampler,* of Plymouth, for appellee.

WICKENS, J.—A verdict below was rendered against appellant as damages for personal injuries received by appellee in a collision of two autos.

Defendant-appellant, Gerald J. Haney, was riding in the front seat of a Kaiser auto which was going west on a county highway approaching an unmarked intersection with another county road. On the other road appellee was driving a Studebaker auto south approaching the same intersection where a collision of the vehicles took place.

Although appellant was not driving, and despite the fact that the operator of the vehicle in which he was riding was exonerated by the verdict, the cause was tried and determined as though appellant was responsible for the vehicle's operation.

Because of the conclusion we have reached, it is unnecessary for us to elaborate on how in this case one who does not own the vehicle, is not operating it, nor is the employer of the driver, can be legally responsible. We think there are circumstances under which one who is present, actively participating or directing the operation of the vehicle may be liable for the things which he did or failed to do irrespective of what might have been done by the person behind the steering wheel, and regardless of the liability of the driver.

60 C. J. S., Motor Vehicle, § 444.

It is vigorously maintained by appellant that the verdict is not sustained by sufficient evidence.

Plaintiff-appellee was unable to relate any of the facts concerning the accident, his memory on that topic was a complete blank as a result of retrograde amnesia. Gerald Haney and Dolores Haney the driver, and a police officer who investigated the occurrence were the principle witnesses. Testimony and photographs were presented showing the condition of the vehicles and their location after the impact. Four children who were passengers in the Kaiser had no recollection of the facts. It should be noted that the trial was nearly eleven years after the collision and that a pretrial examination of Gerald, which is in the record, was not taken until more than six years after. This may explain, in part, the paucity of facts before the jury.

A summary follows of that evidence which we believe is most favorable to appellee. Appellee testified that he was driving in a southerly direction on a clear day at 55 mph. The county highway on which he was traveling and the intersection he was approaching were well known to him, he having traversed the route daily for some five months. He recalled passing familiar farms and the last crossroad before the intersection where the collision occurred. He was asked and specifically replied that he did not recall seeing the Kaiser car, nor did he recall putting on his brakes or blowing his horn. He knew that weeds did obstruct vision at that intersection. He did not recall looking to the right or left as he approached the intersection but his last recollection before the impact was when he was close to 500 feet north of the intersection. His next recollection was in the ambulance on his way to the hospital.

The testimony given by Gerald and Dolores was that he was 20 years old and she was 17; the other passengers were younger; Dolores had been driving that day five to ten minutes; she had no driver's license and may have never driven a car before; the view at the intersection was so obstructed by

weeds that they could not see until the engine of the car was out in the intersection. Very close to the intersection, Dolores who had been driving 30-35 mph applied her brakes and shifted into second gear. There were three persons in the front seat. Gerald was in the middle and both he and Dolores testified to looking in both directions. They saw nothing of the approaching car in time to do anything about it.

A former state patrolman, who had been the investigating officer, testified and identified photographs he had taken. He related that when he came on the scene about 15 minutes after the collision, the cars were just south of the intersection on the west side of the north and south road partially off the highway, the Studebaker being nearer to the intersection. The damage to the vehicles, he described and that which the photos showed, was confined *to the right front side of the Kaiser beginning at about the center post and being restricted on the Studebaker to the entire front.* This witness also testified that Gerald Haney on the day of the accident had said he was driving and that his speed at the time of the accident was 15 mph. He related that the speed limit at this unmarked intersection of two county roads was "sixty-five miles per hour or safe and prudent." And he confirmed that there were no traffic control signals at this intersection. The witness was permitted to relate that his report indicated that the driver of the Studebaker did apply his brakes and skidded before the impact, but the report did not show how far the skid marks extended and the witness had no independent recollection thereof. This witness *stated it was his opinion that the Kaiser entered into the intersection first.*

Nineteen interrogatories were submitted to the jury. By its answers the jury said the view at the intersection was obstructed; defendant's car slowed down and entered the intersection first; plaintiff did not reduce his speed to such an extent that he could have avoided the collision; there was no evidence that plaintiff looked for traffic although he was familiar with the intersection and its visibility; nor was there

any evidence, the answers said, that plaintiff had his Studebaker auto under control, or that he turned his auto to left or to right to avoid a collision. We need not rely on these answers to establish the facts and they are noticed merely to indicate that the facts are without dispute.

It is a familiar rule that negligence will not be presumed or inferred because of an accident or an injury. Injury must be shown to have occurred by an act or omission which is alleged to have been the negligence. There must be a connection between the negligence and the injury. *Southern Ind. R. Co.* v. *Messick* (1905), 35 Ind. App. 676, 682, 74 N. E. 1097.

No presumption or inference of negligence works both ways. There is no presumption that *either* party was, or was not negligent. Neither courts nor juries have any right to presume any fact in issue which they are called upon to determine. *Pennsylvania Railroad Company* v. *Lytle* (1941), 109 Ind. App. 318, 327, 34 N. E. 2d 939.

From the evidence here we could as readily find the existence of contributory negligence as to say that it shows negligence.

Our courts require a recovery to be supported by substantial evidence of probative value. Adequate to support a conclusion is the definition given to "substantial evidence." It has also been said that we mean evidence having quality of proof and having fitness to induce conviction when we allude to the term "probative value." *McCague* v. *N. Y. C. & St. L. R. Co.* (1947), 225 Ind. 83, 89, 71 N. E. 2d 569; *Vonville* v. *Dexter* (1948), 118 Ind. App. 187, 208, 76 N. E. 2d 856, (Transfer Denied).

The determination of the jury must not be permitted to be based on mere conjecture or speculation nor on an inference on another inference. *Johnson* v. *Brady* (1915), 60 Ind. App. 556, 566, 109 N. E. 230, (Transfer Denied); *Pittsburgh, etc., R. Co.* v. *Vance* (1915), 58 Ind. App. 1, 6, 108 N. E. 158.

The rule by which we consider sufficiency of the evidence makes the question of negligence, one which is solely for the jury, where the facts are in dispute, or if reasonable ██ men may draw different conclusions from undisputed Facts. But if the facts are not in dispute, or if the facts most favorable to proponent, with all reasonable and logical inferences that may be drawn therefrom be assumed as true, and reasonable men could draw only one inference from such assumed facts and inferences, then the question of negligence becomes one of law for the court. *Gamble* v. *Lewis* (1949), 227 Ind. 455, 461, 85 N. E. 2d 629.

We hold that negligence here has become a question of law, because there is no dispute in the facts, and those facts most favorable to appellee and all proper inferences are such that reasonable men would only conclude or infer therefrom, an absence of negligence.

It is our opinion that the evidence in the record here is not sufficient to sustain the verdict and the judgment is therefore reversed. It follows that since the question of ██ negligence has become a question of law, which is determined adverse to appellee a new trial is not required on reversal. *McConnell, Admx.* v. *Thompson, Tr.* (1937), 213 Ind. 16, 35, 8 N. E. 2d 986, 113 A. L. R. 1429; F. W. & H. Ind. Tr. & App. Pract. § 2792, Comment 3.

Accordingly the cause is remanded with instructions to vacate the judgment and to enter a judgment for appellant in accord with this opinion.

Judgment reversed.

Prime, C.J., Carson, J., concur.

Faulconer, J., concurs in result.

NOTE.—Reported in 215 N. E. 2d 886.