**MONUMENTAL LIFE INSURANCE COMPANY, Defendant-Appellant**

v.

**Sandra FRANKO, Individually and as Administratrix of the Estate of Paul J. Franko, Jr., Plaintiff-Appellee.**

No. 3–485A102.

Court of Appeals of Indiana, Third District.

Dec. 19, 1985.

Daniel W. Glavin, Beckman, Kelly & Smith, Hammond, Leon R. Kaminski, Newby, Lewis, Kaminski & Jones, La Porte, for defendant-appellant.

G. Anthony Bertig, Law Offices of James V. Tsoutsouris, Valparaiso, for plaintiff-appellee.

GARRARD, Judge.

This action was prosecuted to secure benefits under an accidental death insurance

policy issued to appellee's deceased husband. He died as the result of carbon monoxide asphyxiation on or about December 27, 1981. A jury returned a verdict finding coverage. The sole question on appeal is whether the evidence was sufficient to sustain that result.

The policy in question provided benefits only if Franko's death occurred "as the direct result of an accidental bodily injury ... independently of any other cause." Monumental urges that the evidence was susceptible to an inference of suicide, that the burden of proof was upon the claimant to establish her entitlement to recovery, and that as a matter of law we must determine that she failed to do so.

The core issue, of course, is when should an appellate court defer to the jury's determination and when should it not? It is a question frequently presented and usually readily decided because of the evidence at hand. Yet when the result depends upon the inference to be drawn from facts which are themselves basically undisputed, and those facts arguably support both an inference of liability and one of non-liability, it is a question which can be difficult indeed.

 Even so, the cases provide guidance. As noted by Monumental, the burden of proof was imposed upon Franko. *Prudential Ins. Co. v. Van Wey* (1945), 223 Ind. 198, 59 N.E.2d 721. That burden could be discharged by a preponderance of the evidence. In other words, it is sufficient proof if the evidence introduced produced conviction in the minds of the jury. *Great Atlantic & Pacific Tea Co. v. Custin* (1938), 214 Ind. 54, 13 N.E.2d 542, 545. The burden is met by the evidence of greater weight as the jury views it. *Id.* If the jury concludes that the evidence is evenly balanced, then the burden has not been met. It does not depend upon the number of witnesses, but that upon the whole the jury believe the greater probability of the truth to be upon the side of the party bearing the burden. *Inland Steel Co. v.*

*Gillespie* (1914), 181 Ind. 633, 104 N.E. 76, 80.

 On appeal it is our duty to sustain the jury's verdict unless we are confident that no reasonable jury could have reached that result upon the evidence before it. It is therefore appropriate for an appellate court to reverse if it is convinced that from the evidence the verdict can rest on no more than speculation or conjecture.

What we appellate judges must grapple with is the objective nature of that standard for our review and the essentially subjective nature of the standard as the jury applies it. Our constitutional form of government enjoins us to do so from the perspective that it is the function—and province—of the jury to determine the facts.[1] That is true in hard cases as well as easy ones; in close cases as well as those not so close.

In *American Optical Co. v. Weidenhamer* (1983), Ind., 457 N.E.2d 181, 184, Justice Prentice writing for the majority concerning the propriety of denying a judgment on the evidence said:

"Determining whether or not evidence is sufficient for the purpose proffered requires both a quantitative and a qualitative analysis with the avowed purpose of determining whether or not it can be said, with reason, that such purpose was thereby fulfilled. *If opposite conclusions could, with reason, be drawn, then it cannot be said that the evidence was insufficient.* The key word that is present in all of our variously worded explanations, by inference if not expressly, is 'reasonable.' Quantitatively, evidence may fail only if it is absent, that is only when there is none at all. Qualitatively, however, it fails when it cannot be said, with reason, that the intended inference may logically be drawn therefrom; and this may occur either because of an absence of credibility of the witness or because the intended inference may not

---

**1.** Even so, through our common law reception we also recognize the so-called "thirteenth juror" principle which permits the trial court to set aside a jury's verdict. *See, e.g., Nissen Trampoline Co. v. Terre Haute First Nat. Bank* (1976), 265 Ind. 457, 358 N.E.2d 974.

be drawn therefrom without undue speculation. The use of such words as 'substantial' and 'probative' are useful in articulating the methodology, because they focus our attention upon the qualitative aspects of the issue and succor objectivity where subjectivity is wont to go." (emphasis added)

Applying the same standard earlier to sustain a jury's award on a double indemnity claim, the Supreme Court in *Metropolitan Life Ins. Co. v. Glassman* (1946), 224 Ind. 641, 70 N.E.2d 24, 25–26, said:

"While the evidence was circumstantial, it was not necessary to guess as to the cause of death. It is true there were two inferences possible, one of which would lead to the conclusion of accidental death and one to suicide. If we were to say that the jury was not at liberty to adopt that inference which to them seemed proper under the evidence, we would narrow the rule so that recovery could be had only when the evidence was so conclusive that only one inference could be reached by reasonable men.

Under our system, it was for the jury to decide which of the two or more possible inferences was proved by a preponderance of the evidence. The question of the credibility of witnesses and the weight of conflicting evidence were for the decision of the trial court."

■ Thus, the question before us for review is whether the evidence sustained a reasonable inference that Franko's death was accidental, or whether the evidence viewed most favorably to the verdict would merely permit conjecture to that effect. If a reasonable inference was available, then it is our duty to affirm even if there was also available a reasonable inference that the death was not accidental. The reason is that it is the jury's prerogative to weigh the evidence and, thus, determine whether the burden of proof was met. Our objective review for reasonableness addresses only whether the inference was reasonable upon the evidence adduced. That, of course, requires us to look not just at the death scene, but to all the surrounding facts and circumstances.

■ They are as follows: At the time of his death Paul Franko, Jr. was 30 years old. He had been married about two and a half years and had a normal marriage. He had adopted his wife's daughter by a previous marriage and they had a good relationship. He and his wife had their own first child the preceding August and Paul was highly enamored of the baby. On December 27th both girls had been baptized.

He had a good job which he enjoyed and from which he was earning about $30,000 per year. The family lived comfortably, paid its bills on time and had about five thousand dollars in a savings account. Paul had no substantial health problems, and had no history of depression or emotional illness. His wife had never heard him threaten or speak of suicide. He was active with friends and with hobby interests.

Both the widow and another witness testified to occasions when Paul would work in the garage with the garage door down and the engine on a car or tractor running. When cautioned about the danger of carbon monoxide on these occasions Franko expressed the belief that working in that manner for a minute, or a few minutes, was not dangerous.

On the evening of the 27th Franko and his wife had a quarrel, as they sometimes did. She felt the quarrel was not unusually serious. Franko was concerned about the expense to his parents in providing chemotherapy for his younger sister. (He had eight brothers and sisters.) He proposed to withdraw their savings and donate them anonymously to his parents. His wife felt he should not withdraw the entire account and that the other brothers and sisters should help too. She decided to go to her parents' home as was apparently her habit when the two quarreled. When she left Franko helped carry their daughter, Lori, to the car and put her in the car seat.

One of Franko's sisters testified that she talked to him on the telephone later that

evening. She called to ask about his plan for helping their parents. Franko told her that he was planning to go to the bank and then deliver the money the next day, Monday. He also made arrangements with her to borrow her husband's welder on Wednesday the 30th. Nothing was said in this conversation about the argument Franko had with his wife.

Mrs. Franko did not return to the home until the 31st when the body was discovered in the garage lying next to the car. The door on the driver's side of the car was open. There were keys in the ignition, but *the ignition was turned off*. There was no evidence on Franko's clothes to disclose that he had been working on the car and there were not tools lying about. The car battery for some time had had two dead cells, and Franko's battery charger was close by in the garage.

In the house, clothing was found in the washer and the dryer that had not been there when Mrs. Franko left. Some shirts had been placed on hangers. There was no suicide note. The alarm clock-radio was set for 8:30 a.m. and was sounding when Mrs. Franko entered the home.

Franko was scheduled to be off work on Monday the 28th. Typically, when he did not work, he did not set the alarm. The setting for 8:30 a.m. was consistent with him going to the bank on Monday morning. However, no withdrawal had been made from the account.

Death was determined to have occurred sometime Monday morning and to have been caused by carbon monoxide poisoning. The coroner's verdict was that death was accidental.

The deputy coroner also noted that December had been exceptionally cold that year. In addition to making warmth in the garage desirable, the cold would also make the odor of other emissions from a running engine less noticeable. He stated that the carbon monoxide exhausted into a closed garage would linger until the environment was changed in the garage and that an individual would continue to absorb the odorless carbon monoxide after the engine was turned off.

From the foregoing we conclude that there was a reasonable inference that Paul Franko died by accidental means. Therefore, the verdict was properly for the jury.

Affirmed.

STATON, P.J., and HOFFMAN, J., concur.