**The WRIGHT CORPORATION,**
Appellant (Defendant),

v.

**Evelyn Ruth QUACK,**
Appellee (Plaintiff).

No. 09A02–8611–CV–00409.

Court of Appeals of Indiana,
Second District.

July 20, 1988.

Kim S. Walker, Donald J. Tribbett, Walker, Starr, Austen & Tribbett, Logansport, for appellant.

Courtney B. Justice, Logansport, for appellee.

BUCHANAN, Judge.

## CASE SUMMARY

Defendant-appellant The Wright Corporation (Wright) appeals from a jury verdict ($42,487) in favor of plaintiff-appellee Evelyn Ruth Quack (Quack), claiming that Quack failed to prove that a defect in the condition of the premises of Wright's Beauty College caused her to slip and fall.

We reverse.

## FACTS

On March 29, 1985, sixty-one-year-old Quack went to Wright's Beauty College to have her hair cut, shampooed, and set. She removed her trifocals and after a shampoo, remained under a hair dryer for approximately twenty minutes. One of Wright's students motioned for Quack to walk to her work station. As Quack walked toward the student, she fell on the off-white tile floor, breaking her hip and hitting her head and shoulder. When Quack looked to see why she fell, she only saw a Wright employee mopping up her blood from the floor. Quack testified that

because the incident happened so quickly, she did not know why she fell.

Wright's floor was last waxed on February 23, 1985. A nonslip wax was used which met or exceeded slip-resistance standards. However, the tile was slick if the floor became wet. Although Wright's students had water fights with spray bottles in the past, they were instructed to wipe up the water immediately for cosmetic and safety reasons. While loose hair can also fall to the floor, the area where Quack fell was not near a shampoo basin or hair-cutting station. Wright's instructors and students saw no wet spots or foreign objects on the floor where Quack fell. No evidence was presented demonstrating that the floor was slick at the time of the fall.

Wright's business manager Dennis Gilman (Gilman), who was not on the premises when Quack fell, learned of the incident from several other Wright employees. Although no one could tell Gilman what caused Quack's fall, he prepared a memorandum on April 2, 1985, stating that Quack must have fallen on a wet spot. Following Quack's fall, Sharon Herd (Herd), Wright's supervisor of instructors, got on her hands and knees, mopped up Quack's blood, and saw nothing on the floor that could have caused the fall. An eyewitness observed that Quack was walking quickly across the floor and that the bottoms of her shoes were smooth.

Quack sought recovery from Wright for the injuries she sustained from the fall. Following a jury trial, Wright was found 65% at fault and Quack was found 35% at fault. Quack was awarded a total of $42,487 which included medical expenses, lost wages, and pain and suffering.

## ISSUE

Because we reverse, we need only address the following issue:

Whether the jury verdict was supported by sufficient evidence?

PARTIES' CONTENTIONS—Wright argues that the jury verdict was contrary to law and based upon insufficient evidence because there was no direct or circumstantial evidence, or reasonable inferences therefrom to prove the existence of any defect in the floor which proximately caused Quack's fall.

Quack responds that she presented substantial evidence of probative value to support the verdict against Wright and that the jury drew reasonable inferences from the facts presented.

CONCLUSION—The evidence presented was not sufficient to support the jury verdict.

■ A plaintiff can recover for negligence only if he establishes that the defendant breached a duty owed to him that proximately caused the injury. *Ogden Estate v. Decatur County Hosp.* (1987), Ind. App., 509 N.E.2d 901, *trans. denied; Northern Indiana Pub. Serv. Co. v. Stokes* (1986), Ind.App., 493 N.E.2d 175; *Thiele v. Faygo Beverage, Inc.* (1986), Ind. App., 489 N.E.2d 562, *trans. denied; Letson v. Lowmaster* (1976), 168 Ind.App. 159, 341 N.E.2d 785; *Sparks v. Baldwin* (1965), 137 Ind.App. 64, 205 N.E.2d 173.

Determining whether the evidence sufficiently supports a jury verdict requires a quantitative and qualitative analysis. If opposite conclusions can be drawn reasonably, then the evidence cannot be said to be insufficient. *Carbo, Inc. v. Lowe* (1988), Ind.App., 521 N.E.2d 977. In discussing this method of analysis, our supreme court observed:

> "Quantitatively, evidence may fail only if it is absent, that is only where there is none at all. *Qualitatively, however, it fails when it cannot be said reasonably that the intended inference may logically be drawn therefrom. The failure of inference may occur as a matter of law when the intended inference can rest on no more than speculation or conjecture."*

*Carbo, supra* at 980 (quoting *American Optical Co. v. Weidenhamer* (1983), Ind., 457 N.E.2d 181, 184) (emphasis supplied); *see also Monumental Life Ins. v. Franko* (1985), Ind.App., 486 N.E.2d 608.

■ While Quack alleged that Wright's negligence caused her to slip and fall, she failed to prove that any foreign substance

3

8

was present on the floor or that Wright negligently treated or maintained its floors. The mere allegation of a fall is insufficient to establish negligence, and negligence cannot be inferred from the mere fact of an accident. *Ogden Estate, supra; Stokes, supra; Thiele, supra.*

On direct examination Quack testified as follows:

"Q. Do you believe in your heart that you slipped on something?

A. I feel like I did, if there wasn't something there for me to have stepped on, I feel like the floor was slick."

*Record* at 301–02. On cross-examination, Quack was asked:

"Q. You don't know why you fell, do you?

A. Well, I guess, basically, you can say no."

*Record* at 322. Wright's employees testified that no water, hair or other foreign object was on the floor near Quack's fall. *Record* at 549–53. While students were known to have had water fights with spray bottles in the past, *record* at 443, there was no evidence suggesting that there had been a water fight on the day of the fall. Moreover, hair and water would sometimes accumulate near the washbasins and hair-cutting stations; however, Quack's fall did not occur near a work area where water was dispensed. *Record* at 553.

Immediately after the fall, Herd (the supervisor) performed a "hands and knees" inspection of the area and saw no foreign objects on the floor. *Record* at 549–51. Gilman, who was not on the premises, learned of the incident from other Wright employees who did not witness the fall. *Record* at 389. On April 2, 1985, Gilman, who interviewed the employees on that day, prepared a memorandum which provided in pertinent part:

"FROM: DENNIS GILMAN
SUBJECT: PERSONAL INJURY ACCIDENT WHICH OCCURRED AT THE WRIGHT COLLEGE ON FRIDAY AFTERNOON, MARCH 29, 1985
A customer of the beauty college, Ruth Quack, Burnettsville, IN (according to

the city directory), a seamstress at Bailey's Inc. (also according to the city directory) *fell on what must have been a wet spot on the tile floor and injured her head."*

*Record* at 567 (emphasis supplied). The undisputed evidence reveals Gilman's conclusion was based upon speculation after interviewing other Wright employees. *Record* at 408. He was not presented with any facts to suggest that Quack fell on a wet floor.

▇ Absent factual evidence, negligence cannot be supported by an inferred chain of events and inferential speculation alone cannot establish negligence. *Ogden Estate, supra.* The jury's determination may not be based on mere conjecture, and one inference may not be superimposed on another. Qualitatively, such an evidentiary process is defective. *Haney v. Meyer* (1966), 139 Ind.App. 663, 215 N.E.2d 886, *trans. denied; Johnson v. Brady* (1915), 60 Ind.App. 556, 109 N.E. 230, *trans. denied.* Because Gilman's conclusion that Quack fell on "what must have been a wet spot" was based upon information he received from other Wright employees who merely observed the fall, it follows that if the jury's finding of liability was premised upon Gilman's memo, their conclusion was sheer speculation.

Quack's contentions that there *could* have been a water fight between students, that water or other foreign substance *could* have been mopped up with her blood by a Wright employee, that a wet spot *could* have been absorbed in her clothing when she fell or that a Wright employee's own shoes *could* have scuffed up the wetness, are attempts to establish Wright's negligence by mere guess, conjecture, and speculation. No evidence was presented of any defect in Wright's floor that caused the fall. "Falling and injuring one's self proves nothing. Such happenings are commonplace wherever humans go." *Ogden Estate, supra,* at 903. While we are sympathetic to Quack's plight, considering the evidence and all reasonable inferences therefrom most favorably to Quack, reasonable men could not conclude that

Wright was negligent. As Chief Judge Ratliff said in *Ogden Estate, supra,* at 903, "[n]egligence cannot be established by inferential speculation alone". The jury jumped the gap from reason to speculation.

It follows that the verdict may not stand. The judgment is reversed with instructions to enter judgment for Wright.

Reversed.

SULLIVAN, J., concurs.

ROBERTSON, J., dissents with opinion.

ROBERTSON, Judge, dissenting.

I respectfully dissent from the majority opinion for the reason that it is my opinion that it weighs the evidence and judges the credibility of several of the witnesses in order to reverse the jury's verdict. We are not permitted to exercise either of these functions on appellate review of questions directed to the sufficiency of the evidence. *Warner v. Riddell Nat. Bank* (1985), Ind. App., 482 N.E.2d 772. We may only set aside a jury verdict where there is a latent lack of evidence or where it is contrary to uncontradicted evidence. *Bymaster v. Bankers Nat. Life Ins. Co.* (1985), Ind. App., 480 N.E.2d 273. This case fits in neither of these situations.

A review of all the probative evidence and the inferences to be drawn therefrom, when viewed under the appropriate standard of review, is, in my opinion, sufficient to sustain the verdict. *See, State v. Monticello Developers, Inc.* (1987), Ind.App., 502 N.E.2d 927, *modified on transfer* (1987), Ind, 515 N.E.2d 1070. Reversal is especially not appropriate if the test that reasonable persons would differ as to the result is applied. *Monticello, supra.*

I would affirm the jury's verdict.