

FILED

Jun 29 2020, 8:42 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| R. Gregory Sylvester | Kyle L. Christie |
| Reminger Co., LPA | Cline Farrell Christie Lee & Bell, |
| Indianapolis, Indiana | P.C. |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Cooper's Hawk Indianapolis, LLC d/b/a Cooper's Hawk Winery & Restaurant, | June 29, 2020 |
| *Appellant-Defendant*, | Court of Appeals Case No. 20A-CT-127 |
| | Appeal from the Marion Superior Court |
| v. | The Honorable Heather Welch, Judge |
| Katherine Ray, | Trial Court Cause No. |
| *Appellee-Plaintiff*. | 49D01-1810-CT-42030 |

**Brown, Judge.**

[1] Cooper's Hawk Indianapolis, LLC d/b/a Cooper's Hawk Winery & Restaurant, ("Cooper's Hawk") appeals the trial court's denial of its motion for summary judgment. We reverse.

### Facts & Procedural History

[2] At some point, Katherine Ray and Ian Ray entered Cooper's Hawk while it was raining and walked to the tasting counter to begin their winetasting. After they had been poured their first taste, Katherine told Ian she needed to use the restroom, and she walked through the restaurant to the restroom. While she was on her way and walking down the hallway, she did not notice any water, any accumulation of water, or anything on the floor. She used the restroom, and slipped and fell on her way out of the restroom door.

[3] A Cooper's Hawk staff member informed Ian that Katherine was hurt, and he walked to the restroom. After three EMTs arrived, Ian began looking to see if something might have caused her fall and observed that "[t]he EMS personnel, the doctor . . . did comment . . . his right knee was damp when he arose from a sitting, a kneeling position from next to her." Appellant's Appendix Volume II at 90-91. Ian "noticed that her left – when she arose from a sitting position, her left flank was slightly damp from – her jeans were damp." *Id.* at 91. Ian observed "a few very small puddles, but it was mostly sort of that dampness

that the sidewalk outside had," "[k]ind of as if somebody had sprayed like a spray bottle of water," and "[t]here was a mist on the floor."[1] *Id.* at 92.

[4] On October 19, 2018, Katherine filed a complaint alleging she "slipped and fell on an accumulation of water on the ceramic tile floor" and was injured.[2] *Id.* at 30. Katherine alleged Cooper's Hawk and/or its employees carelessly and negligently: (1) allowed a hazardous condition to exist on its premises after it knew, or in the exercise of reasonable care should have known, of the hazardous condition; (2) failed to maintain its premises in a safe condition; (3) failed to inspect and discover the dangerous condition; (4) failed to remedy the hazardous condition after they knew, or in the exercise of reasonable care should have known, of the existence of the hazardous condition; (5) failed to warn business invitees and the public of the dangerous condition; and (6) failed to provide a reasonable safe walking area for use by invitees, particularly Katherine.

[5] On September 13, 2019, Cooper's Hawk filed a motion for summary judgment and a brief alleging it was entitled to summary judgment because it did not have actual or constructive notice of the defective condition that purportedly caused Katherine to injure herself, it did not owe her a duty, and it was not the proximate cause of Katherine's injury. Cooper's Hawk designated portions of

---

[1] When asked during his deposition about the size of the "small puddles," Ian answered: "Maybe an inch and a half in diameter." Appellant's Appendix Volume II at 92.

[2] At the time of the complaint, Katherine's last name was Bolinger.

the depositions of Katherine and Ian and an affidavit of Meagan Masters, the front house manager of Cooper's Hawk on the date of Katherine's fall. On November 13, 2019, Katherine filed a reply. On November 18, 2019, the trial court denied Cooper's Hawk motion for summary judgment. Cooper's Hawk filed a motion to reconsider, and the court denied the motion.

## *Discussion*

[6] The issue is whether the trial court erred in denying the motion for summary judgment filed by Cooper's Hawk. We review an order for summary judgment *de novo*, applying the same standard as the trial court. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). The moving party bears the initial burden of making a *prima facie* showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Manley v. Sherer*, 992 N.E.2d 670, 673 (Ind. 2013). Summary judgment is improper if the moving party fails to carry its burden, but if it succeeds, then the nonmoving party must come forward with evidence establishing the existence of a genuine issue of material fact. *Id.* We construe all factual inferences in favor of the nonmoving party and resolve all doubts as to the existence of a material issue against the moving party. *Id.*

[7] Cooper's Hawk contends that it did not have actual or constructive knowledge of any hazard present outside of the women's restroom. It asserts Katherine "fails to show how [it] could have discovered the wet spots on the floor outside the women's restroom in the exercise of the ordinary care when, admittingly, the only witness that testified that there were wet spots on the floor stated that

they were hardly visible from a standing position." Appellant's Brief at 15-16. It also asserts that she fails to present facts showing that its negligence was the proximate cause of her fall. Katherine argues that "Cooper's Hawk is incorrect in its claim that it lacked 'constructive knowledge' because Ms. Masters nor any other Cooper's Hawk [employee] was shown to be in the area prior to [her] fall." Appellee's Brief at 15. She also argues that the negligence of Cooper's Hawk was the proximate cause of her fall.

[8] To recover on a negligence theory, the plaintiff must establish: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) an injury to the plaintiff resulting from the defendant's breach. *Rhodes v. Wright*, 805 N.E.2d 382, 385 (Ind. 2004). Absent a duty there can be no negligence or liability based upon the breach. *Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, 62 N.E.3d 384, 386 (Ind. 2016). Whether a duty exists is a question of law for the courts to decide. *Id.* at 386-387. A defendant is entitled to summary judgment by demonstrating that the undisputed material facts negate at least one element of the plaintiff's claim. *Countrymark Coop., Inc. v. Hammes*, 892 N.E.2d 683, 688 (Ind. Ct. App. 2008), *trans. denied*. Generally, summary judgment is rarely appropriate in negligence cases because they are particularly fact-sensitive and are governed by a standard of the objective reasonable person, which is best applied by a jury after hearing all the evidence. *Kramer v. Catholic Charities of Diocese of Fort Wayne-S. Bend, Inc.*, 32 N.E.3d 227, 231 (Ind. 2015). However, where the facts are undisputed and lead to but a single inference or conclusion,

the court as a matter of law may determine whether a breach of duty has occurred. *King v. Ne. Sec., Inc.*, 790 N.E.2d 474, 484 (Ind. 2003), *reh'g denied*.

[9] "Falling and injuring one's self proves nothing. Such happenings are commonplace wherever humans go." *Ogden Estate v. Decatur Cty. Hosp.*, 509 N.E.2d 901, 903 (Ind. Ct. App. 1987), *reh'g denied*, *trans. denied*. "This court has long held that 'negligence cannot be inferred from the mere fact of an accident, absent special circumstances.'" *Brown v. Buchmeier*, 994 N.E.2d 291, 294 (Ind. Ct. App. 2013) (quoting *Taylor v. Cmty. Hosps. of Ind., Inc.*, 949 N.E.2d 361, 364 (Ind. Ct. App. 2011) (quoting *Hale v. Cmty. Hosp. of Indianapolis, Inc.*, 567 N.E.2d 842, 843 (Ind. Ct. App. 1991))). Moreover, negligence cannot be established through inferential speculation alone. *Id.* The mere allegation of a fall is insufficient to establish negligence, and negligence cannot be inferred from the mere fact of a fall. *Id.*

[10] A property owner must maintain its property in a reasonably safe condition for business invitees. *Pelak v. Ind. Indus. Servs., Inc.*, 831 N.E.2d 765, 769 (Ind. Ct. App. 2005) (citing *Douglass v. Irvin*, 549 N.E.2d 368, 369 (Ind. 1990)), *reh'g denied*, *trans. denied*. Indiana has adopted the formulation of landowners' liability to business invitees expressed in the Restatement (Second) of Torts. *Id.* (citing *Douglass*, 549 N.E.2d at 370); *see also Smith v. Baxter*, 796 N.E.2d 242, 244 (Ind. 2003). The Restatement provides:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he:

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

RESTATEMENT (SECOND) OF TORTS § 343. Under this section, an invitee is "entitled to expect that the possessor will take reasonable care to ascertain the actual condition of the premises and, having discovered it, either to make it reasonably safe by repair or to give warning of the actual condition and the risk involved therein." *Merrill v. Knauf Fiber Glass GmbH*, 771 N.E.2d 1258, 1265 (Ind. Ct. App. 2002) (citing RESTATEMENT (SECOND) OF TORTS § 343, cmt. d), *trans. denied*. While a landowner's duty to a business invitee includes a duty to exercise reasonable care to protect the invitee from foreseeable dangers on the premises, there is no duty to insure a business invitee's safety while on the premises. *Schulz v. Kroger Co.*, 963 N.E.2d 1141, 1144 (Ind. Ct. App. 2012). "As an invitor is not the insurer of the invitee's safety, and before liability may be imposed on the invitor, it must have actual or constructive knowledge of the danger." *Id.* "[W]e have defined constructive knowledge as a 'condition [which] has existed for such a length of time and under such circumstances that it would have been discovered in time to have prevented injury if the storekeeper, his agents or employees had used ordinary care.'" *Id.* (quoting *Wal-Mart Stores, Inc. v. Blaylock*, 591 N.E.2d 624, 628 (Ind. Ct. App. 1992)

(citing *F.W. Woolworth Co. v. Jones*, 126 Ind. App. 118, 130 N.E.2d 672, 673 (1955)), *trans. denied*).

[11] The designated evidence reveals that Katherine was clear in her deposition that she did not observe anything, any water, or any wet spots on her way to the restroom. When asked if she observed anything about the flooring that would have caused her to want to notify the restaurant, she answered in the negative. When asked if she observed any slippery substance or a wet spot outside the women's restroom in the hallway after she exited the restroom, she answered in the negative. When asked if she felt "any type of liquid substance or anything like that on any part of" her body after she fell, she answered: "I did not. After the actual injury, I remember very hazily." Appellant's Appendix Volume II at 41-42. She indicated she did not know if anyone reported any type of liquid substance in the hallway prior to her fall. She also indicated she did not see any wetness on her clothing after the incident.

[12] While Ian stated in his deposition that he began looking to see if something might have caused Katherine's fall after the three EMTs arrived and that he noticed one of the EMS personnel had a damp knee and a few very small puddles or mist on the floor, the following exchange occurred during his deposition:

> Q  Do you know what the liquid was?
>
> A  I don't know what the liquid was.
>
> Q  Do you know where the liquid came from?

A I have no idea where it came from. It would just be conjecture.

Q Do you know how long it would have been there?

A I don't recall seeing it, like, when I first got on to the scene when the staff person called me over.

Appellant's Appendix Volume II at 50. With respect to the "mist," Ian stated:

If you were to look at it from the right angle, you could tell that there was something on it that was not on other tiles of the floor. There was a liquid. So if you looked at it at an oblique angle, you could see that there was a liquid on the floor. But it would be very hard to tell just by looking at it from a normal standing view point.

*Id.* at 93. When asked about a comment an EMT made regarding the floor, Ian answered: "It's kind of damp around here. My knee is soaked, as he looked down." *Id.* at 94. When asked if the EMT told him that the wetness was from the floor he was just kneeling on, Ian answered: "He didn't say that, but I interpreted the conversation, as it was implied, that it came from the floor. He did not specifically say, My knee got wet from the floor." *Id.* Ian did not recall seeing a pattern indicating any type of streak marks, any water streaks, or any type of observation that would indicate someone slipping on water. He also did not know how long the mist was present prior to the time he observed it. When asked if any Cooper's Hawk employees knew of any small puddles, he answered: "I'm not aware of their knowledge of it." *Id.* at 53. When asked if he knew if any Cooper's Hawk employees were aware of any accumulation of

water in that area prior to Katherine's fall, he answered: "I'm not aware of anybody's knowledge about it." *Id.* at 54.

[13] Masters asserted in her affidavit that: she was working at Cooper's Hawk as the front house manager on the day of the fall; she did not know how Katherine fell; Cooper's Hawk was not notified of the presence and had no knowledge of any type of hazard or liquid substance on the floor outside of the women's restroom prior to Katherine's fall; "[a]s a matter of practice, the hostess or the houseworkers are instructed to inspect the hallways outside the restrooms and the inside of the restrooms every twenty to thirty minutes"; "[n]o hostess or houseworker informed [her] of the presence of any type of hazard or liquid substance on the floor outside of the women's restroom prior to" Katherine's fall; and she inspected the area where Katherine fell and found no sign of a hazard, water, or other liquid substance on the floor. *Id.* at 57.

[14] In summary, the designated evidence reveals that Katherine did not know what caused her fall. To the extent the evidence indicates that some wetness was present on the floor at some point, we note that it was raining and these observations regarding wetness occurred only after EMTs arrived. Moreover, the designated evidence reveals that Katherine did not observe any wetness on the floor on her way to the restroom and that Cooper's Hawk was not notified of the presence and had no knowledge of any type of hazard or liquid substance on the floor outside of the women's restroom prior to Katherine's fall when she exited the restroom.

In light of the designated evidence, we conclude that the trial court erred in denying the motion for summary judgment filed by Cooper's Hawk. *See Taylor*, 949 N.E.2d at 366 (holding that the plaintiff's claim of negligence was based upon speculation and conjecture where she admitted that she neither saw nor felt anything on the floor prior to or in the moments after her fall and affirming the trial court's grant of summary judgment in favor of the hospital where the plaintiff fell); *Scott Cty. Family YMCA, Inc. v. Hobbs*, 817 N.E.2d 603, 604-605 (Ind. Ct. App. 2004) (reversing the trial court's denial of defendant's motion for summary judgment and holding that the designated evidence presented by the plaintiff did not meet the responsive burden of showing that there was a genuine issue of material fact that warranted presentation of the case to a jury where the plaintiff stated that he did not see any water or any type of foreign substance on the floor, did not observe any defects in the floor, and stated that it "just felt like I hit something wet and it just, it just slipped . . . like you slip on ice or something"); *see also Wright Corp. v. Quack*, 526 N.E.2d 216, 218-219 (Ind. Ct. App. 1988) (reversing a jury verdict in favor of plaintiff where plaintiff testified that she did not know why she fell and concluding that considering the evidence and all reasonable inferences therefrom most favorably to the plaintiff, reasonable persons could not conclude that Wright was negligent), *trans. denied*; *see also Gasser Chair Co., Inc. v. Nordengreen*, 991 N.E.2d 122, 127 (Ind. Ct. App. 2013) (observing that there had been no reported problems with the chair the plaintiff used and holding that no genuine issue of fact existed as to the defendant's knowledge the chair was a dangerous condition on its premises); *Schulz*, 963 N.E.2d at 1145 (observing that the window of time between an

employee being present in the area where the plaintiff fell and the plaintiff's fall was ten minutes at most and that the floor was clean and dry ten minutes prior to her fall, and holding that "[s]hort of imposing a strict liability standard or mandating an employee's presence in every aisle at all times, we conclude that there is no genuine issue of fact in the case before us that Kroger did not have constructive knowledge of the hazardous condition").

[16] For the foregoing reasons, we reverse the trial court's denial of the motion for summary judgment filed by Cooper's Hawk.

[17] Reversed.

Najam, J., concurs.

Kirsch, J., dissents with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

Cooper's Hawk Indianapolis,
LLC d/b/a Cooper's Hawk
Winery & Restaurant,

*Appellant-Defendant*,

v.

Katherine Ray,

*Appellee-Plaintiff*.

June 29, 2020

Court of Appeals Case No.
20A-CT-127

**Kirsch, Judge, dissenting with separate opinion.**

[18] I respectfully dissent.

[19] From my perspective, there are questions of fact whether Cooper's Hawk maintained its premises outside the women's restroom on the date in question with reasonable care to prevent its customers from slipping, falling, and

sustaining injury. These questions preclude the grant of summary judgment to either party.

[20] The Restatement (Second) of Torts, Section 343, states that an invitee is "entitled to expect that the possessor will take reasonable care to ascertain the actual condition of the premises and, having discovered it, either to make it reasonably safe by repair or giving warning of the actual condition and the risk involved therein." Restatement (Second) of Torts § 343, cmt. d.

[21] On the date on which Katherine sustained the injury here at issue, it was raining. Shortly after arriving at the restaurant, Katherine went to the women's restroom. As she exited from the restroom, she slipped and fell. One of the EMTs who came to provide care said that the floor outside the restroom was wet. One of the paramedics who knelt on the floor to assist Katherine said that his right knee was damp. Katherine's blue jeans were also damp. Katherine's fiancé observed that the hallway was damp "as if someone had sprayed like a spray bottle of water" and said that there was a mist on the floor. Appellee's App. Volume II at 40.

[22] The majority cite the testimony of Meagan Master, the front house manager of Cooper's Hawk, who testified by affidavit that (1) she did not know how the plaintiff fell; (2) had no knowledge of any hazard on the floor outside the women's restroom; and (3) that the hostess or house workers are instructed to inspect the hallways outside the restroom every twenty to thirty minutes. Appellant's App. Volume II at 57.

[23] The parties' statements are contradictory. It is the role of the trial court, not the appellate court, to determine credibility. The trial court found that there are questions of fact which render summary judgment inappropriate. I agree and would affirm the trial court's ruling and remand for trial on the merits of this dispute.